FAGAN *v.* STUTTGART NORMAL INSTITUTE.

Opinion delivered June 14, 1909.

1. CORPORATION—POWERS OF OFFICERS.—A director of a corporation may become a creditor of the corporation, if the transaction is open and *bona fide,* and in that event, to protect himself, may purchase the corporate property at a judicial sale. (Page 147.)

2. TRUST—PURCHASE OF CORPORATE PROPERTY BY DIRECTOR.—Where a director in a corporation purchases the property of the corporation at an execution sale to satisfy the claim of another, he does so subject to the rights of the corporation or its stockholders to disaffirm the sale in equity and demand a resale without showing any actual fraud or prejudice. (Page 147.)

3. SAME—WHEN ENFORCED.—A purchase of corporate property at execution sale by a director is good at law, and is only voidable in equity at the suit of some party in interest having equitable rights. (Page 147.)

4. ESTOPPEL—ACQUIESCENCE.—Where stockholders in an incorporated academy recognized the validity of a purchase of the corporate property by a director at execution sale, and encouraged an assignee of such director in acquiring the property and improving it, they will not be permitted to question the validity of such purchase. (Page 148.)

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; reversed in part.

*C. E. Pettit,* for appellants.

1. Porter, by virtue of his position as director and controlling stockholder, was a trustee, and could not speculate upon

the corporation's property, or purchase at sheriff's sale, except as trustee. 38 Ark. 17, 26, 30; 10 Cyc. 815, 787, 791, 799; 35 Ark. 314; 75 *Id.* 188; 33 *Id.* 587.

2. The notice required by section 4923, Kirby's Digest, was not given, and the sale is subject to redemption.

3. The property was in fact redeemed in time. Porter accepted the amount tendered as sufficient, and cannot now object. He is estopped. 17 Cyc. 1334; 31 Ark. 252.

4. Hendrix College is not an innocent purchaser for value. Miller, the president, had notice of the trust and redemption.

5. Mrs. Pettit, the intervener, is certainly entitled to relief, as she loaned the money in pursuance of the order of court.

6. Even if Edwin Pettit was estopped by signing the subscription list, the other stockholders are not.

*John L. Ingram,* for appellees.

1. No right to sue is shown in plaintiffs. 2 Beach, Priv. Corp., § 884. The question can be raised at any time. Kirby's Digest, § 6096.

2. They are barred by laches. 145 U. S. 368.

3. A director is not prohibited from purchasing corporation property when good faith is exercised. 2 Freeman on Ex., § 292 (3 Ed) ; 5 L. R. A. 166; 1 S. W. Rep. 408; 127 U. S. 589; 91 U. S. 587; 10 Cyc. 813; 2 A. & E. Dec. Eq. 255, par. 1; 2 *Id.* 257, par. 2.

4. The presumption is that due notice was given, and the burden was on appellants to show it was not. But if not given the sale was not invalid. 15 Ark. 209; 47 *Id.* 226.

5. The sheriff's deed is *prima facie* evidence that there was no redemption. Kirby's Dig., § 760; 50 Ark. 297. There is no common-law right of redemption. It is purely statutory, and the terms of the statute must be strictly complied with. A deposit in bank is not sufficient. 25 Enc. Law, 847; 38 N. E. 555; 35 S. W. 890; Rorer on Jud. Sales, § § 1148, 1181 to 1193. The full amount requisite must be paid or tendered. 25 Am. & Eng. Enc. Law, p. 487. The statute was not complied with. Kirby's Dig., § § 3281, 3293. General deposits are the property of the bank. 46 Ark. 537; 5 Ark. 283.

6. Hendrix College was an innocent purchaser, and plaintiffs are estopped by signing the subscription list.

7. Mrs. Pettit never loaned the receiver any money. She loaned it to Edwin Pettit. But the receiver still has the money to pay her.

FRAUENTHAL, J. In 1889 a number of the citizens of Stuttgart organized a corporation under the name of the Stuttgart Normal Institute. This corporation was formed under the general incorporation laws of Arkansas relating to "manufacturing and other business corporations." The purpose of its formation was "the establishment and maintenance of an institution of learning at Stuttgart, Arkansas." And it was not expected or intended that its stockholders should obtain any financial profit therefrom, although it was formed under the provisions of the statute relating to business corporations. It secured land known as block 96 in Improvement Company's Addition to the town of Stuttgart, and erected a school building thereon. It proceeded with its purpose and secured teachers and conducted a school, which had its varying periods of success and failure. At times efforts were made to get some organization to take the property free of charge and establish and conduct a permanent school or college there. But these efforts did not meet with success. The affairs of the corporation were conducted by a board of directors, consisting of nine members; and the defendant J. I. Porter was one of these directors from its organization until its dissolution by the decree in this case.

The corporation became indebted to one James A. Gibson, who recovered a judgment against it in the Arkansas Circuit Court on November 10, 1901. Upon this judgment an execution was issued, and by the sheriff of said county levied on the above property, which was all the property owned by the corporation. The property was offered for sale under said execution by the sheriff at public outcry on March 2, 1901, and at this sale J. I. Porter was a bidder. He bid $1,100 for the property, and, this being the highest offer, the same was sold to him by the sheriff.

On January 13, 1902, the plaintiffs, W. M. Price, Edwin Pettit and S. J. Parks, instituted this suit in the chancery court of Arkansas County against the defendants, the Stuttgart Normal Institute and J. I. Porter, and in the complaint asked for the ap-

pointment of a receiver to take charge of the property of the corporation and for the authorization of the receiver to borrow money and redeem the property from said execution sale, and for the dissolution of the corporation. The chancery court, with the agreement of the parties, appointed G. W. Fagan, receiver. On March 1, 1902, the receiver, under the above direction, borrowed from Angeline Pettit the sum of $743.21 for the purpose of paying on the redemption of said property from said execution sale. It appears that at the time of said execution sale the amount due on the judgment and cost was $617.23, and that in making good his bid J. I. Porter paid in money the sum of $617.23, and executed his note for the balance of the bid: $482.77. This cash payment so made by Porter amounted with interest at the rate fixed by the statute in redemption at execution sales to said sum of $743.21 on March 1, 1902. At this time and prior thereto the receiver was also cashier of the German-American Bank, of Stuttgart, Arkansas, and J. I. Porter was vice-president of this bank and carried an account there. The receiver placed to the credit of J. I. Porter on this account with said bank said sum of $743.21. The receiver testified that he did this in the way of paying this sum to Porter in redemption of the property. But Porter refused to recognize this as a payment, and it remained in this form on the books of said bank at the time of the final hearing of the case in 1907. The note for $482.77 which had been executed by Porter on his bid was left with the circuit clerk by the sheriff, and Porter paid the amount thereof to the clerk who thereupon paid the same to the receiver. Thereafter, on May 22, 1902, the sheriff executed a deed to J. I. Porter for the property under the above execution sale.

About this time and prior to June 4, 1902, J. I. Porter entered into negotiations with the president of Hendrix College for the purpose of establishing a school on the property under the supervision and ownership of said Hendrix College or the Trustees of the Methodist Episcopal Church, South. It appears that Hendrix College is a corporation organized under the laws of Arkansas governing the incorporation of institutions of learning, and that its board of trustees are selected by controlling authorities of the Methodist Episcopal Church, South.

On June 4, 1902, the plaintiffs W. M. Price and Edwin Pettit and a number of citizens of Stuttgart, Arkansas, signed an instrument which therein is denominated, "Subscription paper for funds to establish a Hendrix Academy at the Town of Stuttgart, Arkansas;" and is as follows:

"For the purpose of securing the property of the school known as the Stuttgart Normal Institute and sufficient money to meet the $10,000.00 conditions of the trustees of Hendrix College (the college of the Methodist Episcopal Church, South, located at Conway, Ark.), we, the undersigned, agree to pay to the properly designated representatives of Hendrix College the sums set opposite our respective names; provided, that: First, all money and property donated under the terms of this subscription shall be used to improve, equip and maintain the college property at Stuttgart; second, the deed shall be made in fee simple to Hendrix College, but provision shall be made so that if it may become necessary to separate the college and academy the latter shall be owned and controlled by trustees appointed by the annual conference of the Methodist Episcopal Church, South, in which it is located, and, while the college and academy shall not be liable each or either for the other's debts, if the property should be sold, the proceeds must be invested in a similar school in Stuttgart, so that the object for which these subscriptions are made shall not be defeated; and, third, these subscriptions shall not be due and payable until the president of Hendrix College, in writing, acknowledges that the conditions of the constitution of Hendrix College can be satisfied."

Each of the subscribers to said instrument agreed to its terms, and amongst them was the defendant, J. I. Porter, who subscribed the above school property, which was placed at $5,000, and also $1,000 in money; and the remainder of the $10,000 was subscribed by numerous public spirited citizens of Stuttgart. On the same day J. I. Porter executed an instrument whereby he agreed to convey to Hendrix College or said trustees all the property described in said sheriff's deed upon demand, this being the property referred to in said subscription instrument. Thereupon, the various subscriptions were substantially all collected; and with the funds buildings were erected on the said land during 1902. And Hendrix College at once took possession of the property for the purpose of conducting a school thereon; and ever since said

time such school has been maintained thereon under the name of the "Stuttgart Hendrix Academy." In pursuance of the above agreement, J. I. Porter executed a deed for said property to certain named trustees of and for the the Little Rock Conference of the Methodist Episcopal Church, South.

During all the above time the above suit lay dormant; and there is evidence tending to prove that J. I. Porter, Hendrix College and all the subscribers to the above instrument, including the plaintiffs who signed same, understood that the above agreement evidenced by said subscription paper and the payments made thereunder, together with the execution of the bond for deed and the acceptance of the property by Hendrix College, was a settlement of said litigation, and operated in placing a good and perfect title to the property in said trustees. And such evidence was sufficient to sustain a finding to that effect.

Thereupon the court made an order dissolving the corporation, the Stuttgart Normal Institute, and proceeded further in its order to provide for winding up its affairs.

For some time the suit again lay dormant, but it was still pending. Thereafter the plaintiffs filed a supplemental complaint, in which they sought to set aside the above sheriff's deed to Porter and to restore the property for the benefit of the stockholders of the Stuttgart Normal Institute, or to charge said Porter with the value thereof. The receiver was made a party plaintiff, and adopted the above supplemental complaint. Thereupon said Hendrix College intervened, and asked that the supplemental complaint be dismissed, or that it have a lien declared in its favor on the property for the $4,000 expended by it on the property. Later the said Angeline Pettit filed an intervention, seeking a recovery of the money loaned by her to the receiver.

Upon a final hearing, the chancellor dismissed the supplemental complaint of plaintiffs and the receiver and the intervention of Angeline Pettit, and ordered that G. W. Fagan strike from the credit of the account of J. I. Porter on the books of said bank the said sum of $743.21, and ordered that the said sum of $482.77 in the hands of the receiver be distributed amongst the stockholders of the corporation. And from this decree the plaintiffs and intervener, Angeline Pettit, have appealed to this court.

The pleadings in this case are very numerous, and the testi-

mony voluminous; and we have endeavored above to give as briefly as practicable the issues involved and the testimony relating thereto. From this it appears that J. I. Porter was a director of the corporation, the Stuttgart Normal Institute, at the time of his purchase of its property under the sale made under the execution against it. The effect of his relation to the corporation made that sale voidable. A director cannot, as a general rule, make a valid purchase of the property of the corporation at a public or judicial sale. He may become a creditor of the corporation, if the transaction is open and *bona fide;* and in such event, to protect himself, he may purchase at a judicial sale. But, if he purchases at such a sale to satisfy the claim of another, his purchase, in equity, is subject to be set aside at the instance of a party in interest. He is considered in equity as being a trustee for the stockholders and creditors of the corporation, and his position as a bidder is inconsistent with that relation. His appearance as a bidder may have the effect to prevent bidding; and his private interest may conflict with his duties as a trustee of the corporators in protecting their interest. The rule, as sustained by sound moral principles and the weight of authority, is that where a director purchases at a judicial sale made under process in favor of another the properties of the corporation, he does so subject to the right of the corporation or its stockholders to disaffirm the sale and to demand a resale without showing any actual fraud or any actual prejudice. *Little Rock & Ft. Smith Ry. Co.* v. *Page*, 35 Ark. 304; *Jones* v. *Ark. Mechanical & Agricultural Co.*, 38 Ark. 17; *Crawford County Bank* v. *Bolton*, 87 Ark. 142; *McAllen* v. *Woodcock*, 60 Mo. 174; *San Francisco Water Co.* v. *Pattee*, 86 Cal. 623; 3 Thompson on Corporations, § 4071; 6 Thompson on Corporations, § 7866; 21 Am. & Eng. Enc. Law (2 Ed.) 904; 10 Cyc. 814. But such a purchase by the director is good at law, and is only voidable in equity at the suit of some party in interest and with equitable rights. *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587. Under the evidence in this case the plaintiffs are not now in an equitable position to ask that this sale be set aside. After the purchase by Porter at the sheriff's sale, he entered into negotiations with Hendrix College for a transfer of his title, thus obtained, to it or to trustees for its benefit. The plaintiffs or those representing them

not only agreed to these negotiations, but they executed a written instrument by which they encouraged Hendrix College in accepting this title. They thus recognized the validity of the sheriff's deed to Porter, and by their conduct and their act in writing caused a number of citizens to subscribe and pay towards obtaining that title. These parties actually invested their money on this assurance, and Hendrix College erected new buildings on the land on this assurance. By this act and this conduct the plaintiffs in equity and good conscience should not now be permitted to take a different position and attack this sheriff's sale to Porter and the deed executed thereunder.

In the case of *Trapnall* v. *Burton,* 24 Ark. 372, the trustees of a college were about to purchase certain land which was in litigation, and spoke to the plaintiff in the case in which the land was involved, relative thereto. The trustees, relying upon his acts and conduct indicating that he would place no obstacle in the way of the purchase, made the purchase. In that case the plaintiff was held to be estopped to set up any claim that would impair such purchase.

In this case the plaintiffs by their actions induced Hendrix College and its representatives to act upon the reasonable belief that they waived or would waive any rights, remedies or objections which they might have insisted on against the purchase by Porter at the sheriff's sale. And to permit the plaintiffs now to assume a different position would work an injury and a prejudice, not only to Hendrix College, but to every citizen who subscribed and paid towards this commendable cause. The principle of equitable estoppel is "that when a man has done an act or said a thing, and another, who had a right to do so, has relied on that act or word and shaped his conduct accordingly and will be injured if the former can repudiate the act, it shall not be 'done." *Trapnall* v. *Burton,* 24 Ark. 371; *Youngblood* v. *Cunningham,* 38 Ark. 571; *Gill* v. *Hardin,* 48 Ark. 409; *Cox* v. *Harris,* 64 Ark. 213; *Rogers* v. *Galloway Female College,* 64 Ark. 627; *Warren &* *O. V. Rd. Co.* v. *Garvin,* 74 Ark. 136; 16 Cyc. 774-805.

It follows, therefore, that the chancery court was correct in dismissing the supplemental complaint of the plaintiff. However, we are of opinion that the intervention of Angeline Pettit should not have been dismissed, but the relief should have been granted

to her. Under the direction of the chancellor the sum of $743.21 was borrowed by the receiver from her, and the receiver executed to her a note with interest therefor. That should be paid to her. There is really in the hands of the receiver through the German-American Bank the sum of $743.21, and in addition to that the sum of $482.77. Out of these funds the receiver should be directed to pay to said Angeline Pettit the amount of said note and interest, if there shall be sufficient funds. And that the receiver should distribute any balance to the stockholders, as provided in the decree of that court.

The decree, in so far as it dismisses the supplemental complaint of plaintiffs, is affirmed. But it is reversed, in so far as it dismisses the intervention of Angeline Pettit; and this cause will be remanded with directions to enter a decree in accordance with this opinion.