## ALLEN *v.* DANIEL.

### Opinion delivered March 7, 1910.

1. ADVERSE POSSESSION—CONSTRUCTIVE NOTICE FROM POSSESSION.—As against a subsequent grantee whose deed has been duly recorded, no mere constructive possession of a prior or even rightful claimant, consisting only of an original act of taking actual possession, followed by a leaving of the premises vacant, can amount to constructive notice from possession. (Page 145.)

2. SALE OF LAND—INNOCENT PURCHASER.—One who purchases land *pendente lite* and with full notice of his adversary's title is not an innocent purchaser. (Page 146.)

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

On the 31st day of March appellant brought suit against appellee in the Lee Chancery Court, alleging that he, appellant, was the owner of the land in controversy by deed from Rosa Isaacs, and that he was then in possession of same, that appellee claimed to own the land under a deed of the Commissioner of State Lands which was void for reasons stated that are unnecessary to set forth. Appellant tendered the amount paid by appellee for the land, and prayed that appellee's deed be canceled and appellant's title quieted. On May 19, 1908, appellee answered the complaint, denying that appellant was the owner

of the land in controversy, denying that the lands were contained in the deed from Isaacs to appellant, denying that the lands were forfeited to the State for the nonpayment of taxes, and setting up title in himself, appellee, through Scott Congress, who obtained deed from M. and Rosa Isaacs January 1, 1891. Appellant replied to the answer, alleging that neither of the two deeds by which defendant claims title were of record, denied the execution of said deeds, alleged that he had no notice of any adverse claims in the property, alleged that he paid a valuable consideration for said lands, and prayed that he be adjudged a purchaser for value without notice, and the title quieted in him.

The appellee at the hearing admitted the invalidity of the tax title, and claimed only under the deed from Congress. The testimony of appellant is as follows:

That in 1900 he entered into a contract of purchase with M. Isaacs for the property described herein, went into possession thereof, and made five payments under the contract to Isaacs; that Isaacs assigned the purchase notes to defendant, who afterwards brought suit against him thereon; that Mr. Lesser, his merchant, took up the notes from Daniels, and the suit was dismissed, and he received his deed as per the contract; that at the date he entered into the contract with Isaacs for the purchase of the property it was vacant, Congress having moved off prior to that date; that he had a talk with Congress regarding his claim or ownership of the property, and Congress told him he had nothing to do with it; that he had been in the absolute, open, continued and notorious, adverse possession of the property from that date until the present time; that no demand had been made against him by any one until after he had brought this action. The deed from Rosa Isaacs to appellant executed in pursuance of the contract for the purchase of the land bears date May 20, 1907. The description by metes and bounds is of a tract of land containing forty acres more or less, and the lot in controversy is included in the tract conveyed.

Witness Scott Congress testified December 12, 1908. His testimony and the deed from Isaacs shows that he bought the lot in controversy January 1, 1891. In his testimony he says that he lived on the place five or six years after he got his

deed from Isaacs. He repeats this several times. But he also says that he "moved off the place about six years ago;" that he could run it down and get the year he moved off the place. He lived with a Mr. Lindsay two years, and with Mr. Anglin about four years, which will make it six years. He was asked if he knew the year when he was testifying, and answered, "1907 or 1908." When asked if he remembered about John Allen buying some land from Isaacs about the time he, Scott, left the place, his reply was: "No, he was only renting it. He did not buy till I left." He made a cash payment on the land he bought from Isaacs, executed his notes for balance of the purchase money, paid part of them, and then gave the land up. - He moved away, and left the lot vacant, did not make deed back to Isaacs, but told him he wanted to turn the property back, and would pay no more on the purchase price. He executed the deed to Daniels in the fall of 1908. Daniels had not paid him one cent for the land. He was asked if he had "any conversation with old man John Allen about this property, about who owned it, and replied: "He got after me before I left there and tried to get me to pay rent. I told him I was not going to pay rent, when I lived there. I said it was mine, and he had no business paying taxes, and it made me mad in that direction; neighbor living right there by me."

Witness M. Isaacs testified that he made, as the agent of his wife, a contract with John N. Allen, December 26, 1900, selling him certain lands, and that he sold Scott Congress a certain lot in January, 1891; that he did not intend to include the Scott Congress lot in the land sold to Allen, but that John Allen bought only what was under fence; that he had a survey made of the property sold Allen, made long before the termination of the rental contract; that the deed to Allen was made from this survey; that he intended to convey to Allen only the land under the fence, and that when the contract was made the survey was made around the fence; that Congress has never paid him over $20 or $25, and owes a balance of $100 at this date; that the property was vacant several years, and is not positive that Congress was occupying the property at the date of the contract with Allen; that he was not living in Haynes at the time; did not tell Allen that Congress had any claim

on the property; and would not remember anything of the transaction, had his memory not been refreshed.

In one place he testifies that Congress was living on the lot at the time he made the contract of sale with Allen, and again that Congress at that time was living there, and that the negroes were "spatting at each other," and were not on good terms. But he also says that he thought Scott Congress abandoned the property about 1899, that he left there about 11 years ago (he was testifying in May, 1909, which would make it the year he left, 1898), and was not there when he made the contract for the sale of the land to John Allen. He further testified that "if there was testimony in this case by Scott Congress and by John Allen that Scott was not living on this property in December, 1900, he would not say of his own certain knowledge that Scott was there."

Appellee testified that he knew Allen was claiming title to the property when he acquired the Congress title; that he had been served with summons in this action; that he had in 1907 sued Allen for the purchase money of the property described in the contract of Allen-Isaacs which had been assigned to him; that he had dismissed the suit on payment of the balance of the purchase money by Allen; that he knew that Congress had abandoned the property; and had never paid Congress for the property deeded to him May 4, 1908; that he thought Congress had been off the place only three or four years when he bought from the State November 21, 1906.

The court dismissed appellant's complaint, and quieted the title in appellee. Appellant duly prosecutes this appeal.

*C. E. Daggett,* for appellant.

The evidence clearly establishes the fact that Allen was a *bona fide* purchaser without notice. Even if Congress was in possession at the date of the contract, such possession served no other purpose than to put appellant on inquiry or notice of whatever title Congress had; and when appellant went to him and inquired as to his title, that was all that the law required of him. 2 Pom. Eq. Jur., §§ 614-615; *Id.* §§ 623-624. When appellant took his deed in 1907, the property had been vacant for over five years, with the original owner living in a half a mile of it and exercising no rights over it in any manner. At this

date, therefore, the premises being entirely unoccupied, appellant took without notice. 2 Pom. Eq. Jur., § 621. Congress and his grantee, Daniel, are estopped from asserting title. 2 Pom. Eq. Jur., § § 601, 607, 780, 804.

*H. F. Roleson,* for appellee.

The testimony fully sustains the chancellor's finding that Scott Congress was in possession of the lot at the time Allen made his contract of purchase with Mrs. Isaacs. This contract describes no certain tract of land, since it describes it only as the "middle part of east half northeast quarter, section 8 and part west half northwest quarter section 9, containing 40 acres more or less." The testimony shows conclusively that it was not intended to include the Congress lot, which was fenced off to itself, and was not a part of the field intended to be sold to Allen. If a mistake or fraud was committed in the procurement of the deed from Mrs. Isaacs to Allen, and it included the land not intended to be conveyed, Isaacs or any one claiming through him could in equity set up the fraud or mistake. 33 Ark. 119; 24 Am. & Eng. Enc. of L. 655.

WOOD, J., (after stating the facts). Appellant has the record title to the land in controversy. Appellee has an unrecorded deed to the land from the same source. The first question is, did appellant have notice at the time he purchased of appellee's title?

We are of the opinion that the clear preponderance of the evidence shows that he did not have such notice. The testimony of appellant is positive that at the time he purchased the lot from Isaacs Scott Congress, appellee's immediate vendor, had abandoned it. He said that at the date of his purchase, in a conversation with Congress, the latter "told me he had nothing to do with it," that "he had turned the property over to Mr. Isaacs," that "he had left it, had not paid for it, and had nothing to do with it." Again he says that at the time he made the contract with Isaacs he thought "Scott Congress had just moved off of it," and again, "from the time I took the contract from Mr. Isaacs not a soul ever touched it but me." Now, even if Scott Congress was on the lot at the time appellant made his contract of purchase, December 26, 1900, that fact could only have the effect to put appellant upon inquiry as to Congress'

rights. The fact is undisputed that he did make inquiry of Congress, and that Congress told him that he had given up the place. Furthermore, even if Congress was on the place when appellant contracted to buy the lot in 1900, the undisputed evidence is that at the time appellant procured his deed from Mr. Isaacs, in 1907, Congress had been away from the place at least five years, and, although living in a short distance from it, he had wholly abandoned it. These facts are established by Congress himself. "It seems to be a necessary conclusion from the unvarying line of decisions," says Mr. Pomeroy, "that, as against a subsequent grantee whose deed has been duly recorded, no mere constructive possession of a prior or even rightful claimant, consisting only of an original act of taking actual possession, followed by a leaving of the premises entirely vacant and unoccupied, can amount to the constructive notice from possession, as recognized by the American law," 2 Pom. Eq. Jur. § 621.

· We are of the opinion that, even if Congress did occupy the premises at the time Allen made his contract to buy, the undisputed evidence warranted him in concluding, at the time the sale was consummated by payment of the last purchase money note and the execution of the deed to him, that Congress had abandoned the lot, "had given it up," and had no further interest therein. The undisputed evidence, in other words, shows that appellant did not have any actual notice of Congress' title. The deed of Isaacs to Congress being unrecorded, appellant, had no constructive notice. Therefore, as between Congress and appellant, the latter's title is perfect.

Appellee, according to his own and the undisputed evidence, purchased from Congress after the institution of this suit by appellant, and of course with full notice of appellant's claim and rights. He is not an innocent purchaser. He stands in the shoes of Congress, and, as Congress under the evidence would have no right against appellant, neither has appellee.

The appellee contends that the evidence shows that Mrs. Isaacs never intended to convey the lot in controversy to appellant, and that the lot was included in his deed through mistake or fraud. But appellee acquired his title through Congress, and has no other or greater rights than Congress would

have. Congress would be estopped from claiming as against appellant; so is appellee estopped. Mrs. Isaacs is not complaining of any mistake. Appellee is in no position to complain.

The judgment is therefore reversed with directions to enter a decree quieting the title of appellant to the lot in controversy.