BROWNFIELD *v.* BOOKOUT.

Opinion delivered February 28, 1921.

1. LIMITATION OF ACTIONS—HOMESTEAD OF INFANTS.—Where land belonging to a father was his homestead at his death, the statute will not run against his adult children until termination of the homestead right of the youngest child.

2. HOMSTEAD—ABANDONMENT BY WIDOW.—On the abandonment of the homestead by a widow, the entire homestead right vests in deceased's minor child or children.

3. TRUSTS—RESULTING TRUST.—Where a father and sons purchased land in the father's name under an agreement that the sons who furnished the greater part of the consideration should have a proportionate part of the land, a resulting trust in favor of the sons was created.

4. ESTOPPEL—ACQUIESCENCE.—Where a person, with actual or constructive knowledge of the facts, by his words or conduct induces another to believe that he acquiesces in a transaction, or that he will offer no opposition thereto, and the other, in reliance on such belief, alters his position, the former is estopped from repudiating the transaction, to the other's prejudice, regardless of the intent of the former.

5. ESTOPPEL—SILENCE.—If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when he ought to remain silent.

6. ESTOPPEL—ACQUIESCENCE.—Where a father and his sons purchased 160 acres of land under an agreement that the sons who furnished the greater part of the consideration should each have 40 acres of the land, and where the father died before paying the balance of the purchase money, an adult daughter, who, on her father's death, declined to pay any part of the balance, and permitted the sons to pay the balance of the purchase money under agreement with their mother that they were to have the land, and to go into possession and make valuable improvements thereon, is estopped to assert any rights in the land.

7. ESTOPPEL—PRIVIES.—Where a daughter by her acts estopped herself from claiming an interest in her father's land, such estoppel is binding on her children.

Appeal from Izard Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

### STATEMENT OF FACTS.

On the 28th day of September, 1918, Alma Brownfield *et al.,* brought this suit in equity against W. H. Bookout *et al.,* to have the defendants declared trustees, for themselves and the plaintiffs to 160 acres of land described in the complaint.

The complaint alleges that plaintiffs and defendants are the children and heirs at law of Jake Bookout, deceased, and that the land described in the complaint belongs to his estate. The legal title is in the defendants.

The defendants denied that the plaintiffs had an equitable estate in the land and averred that if the plaintiffs had an equitable interest in it, they are estopped by their conduct from claiming such interest.

The facts are as follows: In 1905, Alfred Lowrance and Jake Bookout, together with his sons, W. H. Bookout, A. R. Bookout and J. W. Bookout, entered into a contract for the sale by Lowrance to the Bookouts, of a tract of land in Izard County, Arkansas, comprising 160 acres for the sum of $425. The contract was in writing and was made between Alfred Lowrance and Jake Bookout. The Bookouts gave Lowrance, at the time, a wagon and harness and a team of mules, which were valued by the parties at the sum of $250. J. R. Bookout was the owner of one mule, and A. R. Bookout was the owner of the other. Each mule was valued at $100. W. H. Bookout and his father, Jake Bookout, jointly owned the wagon and the harness which was valued at $50. Jake Bookout delivered to Lowrance two promissory notes for the balance of the purchase price of $175. One note was for $85 and the other was for $90. Jake Bookout moved upon the land, and the same constituted his homestead until his death, which occurred on the 16th day of February, 1907. He left surviving him a widow, Mary Bookout, and his sons above named, together with his daughters, Alma Bookout and Eliza Goodson, and his minor

son, Owen Bookout. After his death, his widow being. unable to pay the balance due on the purchase price of said land, it was agreed between her and his sons, W. H. Bookout, A. R. Bookout and J. W. Bookout, that said sons should pay the balance of the purchase money, and that a deed to the land should be executed to them. W. H. Bookout paid the $85 note and the three brothers paid the $90 note. At the time the original contract was made, Jake Bookout agreed with his sons that, if they would help him pay the purchase price, as above stated, he would give each of them 40 acres of the land.

Alma Brownfield and Eliza Goodson knew that their brothers made the initial payment on the land, as above stated, and that they were going to finish paying out the land and have the title taken in themselves. Eliza Goodson joined herself as a party plaintiff to the suit, but subsequently filed a disclaimer in which she stated that she would never have claimed any part of the land, but that her husband had made her do so. She testified that she did not claim any interest in the place and did not deserve any interest in it; that her brothers had paid for the place, and that she had executed a quitclaim deed to them and never claimed any interest in the land.

Alfred Lowrance corroborated the testimony of the defendants in regard to the original contract and the payment of the land by the defendants.

According to the testimony of W. H. Bookout and J. W. Bookout, their sister, Alma, declared that she would not help pay out the land, and knew that they intended paying it out and taking the title to themselves. Jake Bookout died on the 16th day of February, 1907, and Alfred Lowrance executed a deed to the land to the defendants on the 16th day of November, 1909, after they had finished paying the purchase price. Alma married E. D. Brownfield on the 29th day of September, 1909. She died during the pendency of this suit, and the suit was revived in the name of her minor children. Alma Brownfield lived near the land in controversy from the

date of her father's death until she instituted the present action.

The defendants took possession of the land and made valuable improvements on it after their father's death. In August, 1918, they sold the land to Dave Boles, one of the defendants to this action. Dave Boles made improvements on the place which it is agreed enhanced the value of the land in the sum of $150. The land, at the time the suit was pending in the chancery court, was variously estimated at from $1,000 to $1,500.

The chancellor found the issues in favor of the defendants, and the complaint was dismissed for want of equity. The plaintiffs have appealed.

*Elbert Godwin,* for appellants.

The issues for this court to determine on the pleadings and testimony are, Have appellees asserted their rights within the time allowed by law? Were the lands the homestead of Jake Bookout, deceased? Did the defendants or Jake Bookout make the first payment on the place in the sum of $250? Were the appellees barred by laches? Did the appellees, in good faith, believing themselves to be the true owners thereof, and under color of title make improvements on said lands? Was the finding of facts as announced by the court sustained by a preponderance of the testimony? And was the decree sustained by the testimony?

According to the undisputed testimony, Mrs. Mary Bookout, the widow of Jake Bookout, deceased, lived on the lands with one of the three boys who were occupying and cultivating said lands from the date of the death of her husband until the lands were sold to defendant Dave Boles. Jake Bookout bought the lands in the year 1905 and died in February, 1907. He collected the rents and profits from the lands, and the boys were not known in the deal until after his death. Although the widow may have abandoned her right to the homestead in favor of the boys to whom the deed was made immediately after

the death of her husband, nevertheless she could not abandon the homestead to the prejudice of the minors.

The homestead estate is created equally for the benefit of the wife and children, and none of them can do an act that will impair or prejudice the right of the others. 29 Ark. 280; 21 Ill. 178. We admit that Jake Bookout did not have the legal title in himself. He had only the equity of redemption in said lands. There had been paid on the lands the sum of $250, leaving a balance of $175 still due and payable. It does not make any difference who paid the $250, the title bond was made, executed and delivered to him; and if he had paid the balance before he died, the deed would have been made to him and not to the three boys. A man can have a homestead interest in an equitable estate the same as in an estate in fee simple. 40 Ark. 69; 21 Cyc. 508; 101 Ark. 296.

Jake Bookout occupied the lands as a homestead, the title bond was to him and his heirs, and the taxes were paid in his name, and he collected the rents and profits. No one was known in the deal except Jake Bookout, and he occupied them as a homestead, and he certainly had an interest that his widow or heirs could sustain against all claimants. 53 Ark. 400.

Abandonment of a homestead by the wife and mother does not affect the homestead right of the minor children. 115 Ark. 359; 29 Id. 635.

Jake Bookout's minor children had two separate estates in the lands existing at the same time and incapable of merger, one of homestead and one of inheritance. 47 Ark. 504; 53 Id. 400. Though the rights to rents and profits belonging to the heirs of Jake Bookout ceased on their becoming of age, their interest in the lands does not cease until Owen Bookout, the youngest child, became of age, if he had lived. 47 Ark. 504. Alma Brownfield was not barred by laches. 55 Ark. 85; 56 Id. 485; 155 Fed. 809-10; 85 Id. 55; 101 Id. 322;-30; 145 U. S. (Law. Ed.), 738.

Appellees are not prejudiced by any delay of appellants in bringing their suit.

The very question involved here was decided in 70 Ark. 371. See, also, 49 Ark. 242.

The adult heirs who paid some on the purchase price of the lands stand in exactly the attitude of any other creditor of their father's estate.

The law forbids a trustee or one standing in a fiduciary capacity from taking personal advantage touching the subject as to which the fiduciary relation exists. The rule applies to tenants in common. 20 Ark. 402; 5 Johnson, Chy. 407; 6 Dana 321; 3 *Id*. 321; 2 Black. 618; 39 Cal. 125; Freeman on Cotenancy & Part. (2 ed.), §§ 151-163. Beaphams, Eq. (3 ed.), §§ 92-3.

The law as announced, 49 Ark. 242, is approved in 68 Ark. 534. As this case must be tried here *de novo* on appeal (93 Ark. 394), judgment should be entered here for appellants as prayed in their complaint.

*John C. Ashley,* for appellees.

The appellants are barred by laches and did not assert their rights in time. 55 Ark. 85; 56 *Id*. 485; 101 *Id*. 235. Alma Brownfield waited too long after she had notice. 65 Ark. 535. She was guilty of laches also. 58 Ark. 84; 55 *Id*. 85; 60 *Id*. 50; 87 *Id*. 233; 75; *Id*. 52; 97 *Id*. 537, 596.

HART, J. (after stating the facts). Counsel for the defendants first seek to uphold the decree on the ground that the plaintiffs are barred of relief under the seven-year statute of limitations. We can not agree with counsel in this contention. The land was the homestead of Jake Bookout when he died. His youngest son, Owen Bookout, died in March, 1920, at the age of 15 years. If the land belonged to Jake Bookout and was his homestead at the time of his death, the statute of limitations would not begin to run against the adult children until the termination of the homestead of the youngest child. *Smith* v. *Scott,* 92 Ark. 143, and *Burel* v. *Baker,* 89 Ark. 168.

The widow abandoned the homestead after her husband's death and agreed that the title should be placed in the defendants, her adult sons, when they should pay the balance of the purchase money. This did not affect the rights of the plaintiffs, however. Where the widow abandons the homestead, the right to the entire homestead thereupon vests in the minor child or children. *Stubbs* v. *Pitts,* 84 Ark. 160; *Gatlin* v. *Lafon,* 95 Ark. 256, and *Martin* v. *Conner,* 115 Ark. 359.

W. H. Bookout, A. R. Bookout and J. W. Bookout furnished the greater part of the consideration at the time the contract for the purchase of the land was entered into with Lowrance, and it was agreed that they should have a proportionate part of the land for their interest. This is clearly established by the testimony. Although the contract was made in the name of Jake Bookout, the father, a resulting trust was created in favor of the sons, W. H. Bookout, A. R. Bookout, and J. B. Bookout in the land. *Davis* v. *Dickerson,* 137 Ark. 14; *Lasker-Morris Bank & Trust Co.* v. *Gans,* 132 Ark. 402.

It follows from this that Alma Brownfield would be entitled to claim as one of the heirs of Jake Bookout, deceased, her interest in that part of the land which was the homestead of her deceased father, unless she is estopped by her conduct from claiming her interest in the same. Where a person, with actual or constructive knowledge of the facts, induces, by his words or conduct, another to believe that he acquiesces in a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. And this is so regardless of the particular intent of the party whose acquiescence induces action. 21 C. J., p. 1216, section 221; 2 Pomeroy's Equity Jur. (2 ed.), section 818. See, also, *Thompson* v. *Wilhite,* 131 Ark. 77; *Davis* v. *Shelby,* 136 Ark. 405; *Fagan*

v. *Stuttgart Normal Institute*, 91 Ark. 141, and *Rogers* v. *Galloway Female College*, 64 Ark. 627.

This doctrine rests upon the principle that, if one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent. This principle of natural justice decides against the plaintiffs in this case. Alma Brownfield knew the circumstances under which the original contract was made, and that a balance of the purchase price remained due and unpaid at the time of her father's death. She declined to take any part in paying out the land and knew that it was agreed between her mother and her three adult brothers that they should finish paying out the land and take the title in themselves. They had already made the greater part of the initial payment in their father's lifetime with the understanding that they should receive a proportionate part of the land. Alma Brownfield allowed them to remain in possession of the land after they had paid it out and to make valuable improvements thereon. In 1918 before this suit was instituted, they sold the land to Dave Boles for a valuable consideration, and he made improvements thereon which enhanced the value of the land in the sum of $150. These facts and circumstances make a case of equitable estoppel against Alma Brownfield, and she cannot be permitted in a court of equity to assert her legal rights against the defendants in whose favor the estoppel is invoked.

The estoppel against Alma Brownfield is equally efficacious in its operation upon all who claim under her. Therefore, her children are estopped to maintain this action.

As shown in our statement of facts, Eliza Goodson, the sister of Alma Brownfield, executed a quitclaim deed to the land to the defendants and disclaims any interest in the present suit.

It follows that the decree must be affirmed.