RONE *v.* SAWREY.

4-5319                                                  123 S. W. 2d 524

Opinion delivered January 9, 1939.

*B. B. Spencer* and *Vol T. Lindsey,* for appellant.
*Earl Blansett* and *Ely Lefler,* for appellee.

BAKER, J. The appellant states the issues on appeal as follows: "The court based its decree upon the law of estoppel, that the evidence was such as precluded the plaintiff from asserting his rights to said real estate and that through silence of the Hitt heirs, the defendants, as Trustees, had acquired title to such lands."

To this the appellees add: "That the learned Chancellor rendered his decree not upon the theory of estoppel by silence, but by words, acts, acquiescence and silence."

We shall attempt to state such facts as we think are necessary to settle the sole issue of estoppel which is conclusive of all the rights involved.

The appellants filed a suit praying for a temporary restraining order to stop the construction of a church building on an acre and a quarter of land which is particularly described in the complaint, but it is sufficient in this case to say it is a tract of land located within the southwest quarter of the northwest quarter and the northeast quarter of the northwest quarter of section 17, township 17 north, range 31 west. This small bit of land had been deeded to Neil Sawrey and others as trustees of the Assembly of the Church of God. It was alleged, and we think sufficiently established, if not admitted, that the title to the property had been in John Hitt, who died and left surviving him Alice Hitt, his widow, and four children, as the sole heirs-at-law. The children were adults,

none of them residing upon or really close to the property. It had been left for sometime in the sole or exclusive possession of the widow, Alice Hitt, who executed the deed of conveyance to the property in controversy. After the deed was executed, but before the land was purchased by John Rone, and while Alice Hitt was still living, a church building was begun on the acre and a quarter of land. Those who were interested met and leveled off a place for the construction of the building. Thereafter, a concrete foundation was put down, then the frame-work of the building was commenced. During the time of the construction of this part of the building, prior to the death of Alice Hitt, it is alleged that all the children or heirs-at-law of John Hitt and Alice Hitt knew that these improvements of a substantial nature were being constructed upon the land and none of them at any time, so far as the evidence discloses, made any objection thereto, but at least one of the heirs, Otis Hitt, joined with laborers and friends in doing a part of this work of construction. It is not understood from this evidence, however, that he was employed, but, like others who worked upon the building, was a volunteer laborer rendering his services in an effort to construct the building for the use of the church organization. We think it may be said to be within the understanding of all the parties that this acre and a quarter of land was a part of the homestead of John Hitt, deceased, although the evidence discloses that the tract of land owned by John Hitt consisted of 180 acres. Of course, it is well known that the homestead could not have contained more than 160 acres, but we assume, as have all counsel in this litigation, that the land in controversy was a part of the actual homestead of John Hitt. The conclusion, therefore, necessarily arises that Mrs. Hitt's conveyance was not effectual as such, as it amounted only to an abandonment of that portion of the homestead which she attempted to convey. Since she attempted to convey only the acre and a quarter of ground described that must be the portion which she abandoned and it is the same portion or parcel of land which the parties to this controversy, by their counsel, have agreed, in the foregoing statements

from their briefs, the title to which must be determined under the doctrine of estoppel.

In addition to the foregoing facts, that the conveyance had been made, that the heirs-at-law had knowledge thereof, that they had permitted and to some extent assisted in making substantial improvements thereon for the benefit of the church organization, the proof discloses the further fact that the appellant after the death of Mrs. Alice Hitt, decided to purchase the entire Hitt tract of land from the heirs; that he made an investigation or inspection of the land prior to his purchase and that at that time he found the church building under construction. In fact, he was upon the ground while the construction work was being performed. He entered into a contract to buy the land, but refused to accept a deed to it unless the acre and a quarter of land was incorporated in the conveyance and made a part thereof. He advised the two Hitt brothers that if they expected to sell and convey to him this land they must stop the construction work. Although they had agreed up until that time that their mother's conveyance should be ratified and confirmed by them, they then went to those who were working upon the house and had them cease their labors until they could sell the land. Neil Sawrey, one of the appellees here, and one of the trustees to whom the land had been conveyed, immediately after this interruption of the work went to the home of John Rone in Oklahoma and attempted to purchase the land from him for his church organization, but Rone refused to sell, but according to his own testimony offered to give or donate the land for church purposes to the community if all denominations alike were to be treated as the beneficiaries of the grant. There was no settlement or agreement, but later the work was resumed upon the church building. Then this suit was instituted to procure a temporary restraining order. This fact that Sawrey, as a representative of the church organization, attempted to buy the property from John Rone is argued as an additional reason or ground that the appellees should not prevail in this litigation. Without attempting to minimize the justice of this argument, we think it may be answered by saying that perhaps at

this time Sawrey and his co-trustees had all been advised that the deed executed by Mrs. Hitt was not effectual as a conveyance and it is now admitted and conceded by appellees that her conveyance of the acre and a quarter of land was a nullity.

We think it might well have been argued, though it has not been suggested, that Sawrey and his co-trustees were seeking some form of settlement or compromise, trying to find a peaceful solution of a controversy, the outcome of which at that time, at least, was very doubtful. When the proceedings had progressed to this extent, a concrete foundation for the church had been built, about 24 ft. by 52 ft.; oak frame-work and some siding had been put up. The roof had been constructed and this had all been done at the expense of the community in the erection of their church building, with a knowledge, at least, of all the heirs, with their acquiescence, with the actual aid of some of them, with the assurance from those who talked about it that they wanted to do what their mother had attempted to do, aid in the construction of the church building. This work, no doubt, had cost the community a substantial sum of money. We do not know how much as that fact is not disclosed with any degree of certainty. In addition to the money, the labor donated was of considerable value. The proof discloses further that this building was of such form of construction and proportions that it could not be moved to another site without completely wrecking and destroying it as a building and much of the material be lost. When Mr. Rone saw this building in that condition, we must and do assume that he knew something of the expense and labor expended for the improvements. Prior to the time he bought, he made no effort to determine, by consultation, from those who were interested whether his purchase would be respected, but advised the Hitt heirs that they must stop construction before he would buy. We do not assume that he was attempting to proceed at the expense of the church community. There is no evidence that would justify such an assumption. In fact there is no evidence that, if he did not obtain possession of the acre and a quarter of land, he would suffer any seri-

ous damage or actual loss. It is a very small proportion of the larger tract. The value is not a very material issue if he had the right of possession. Rone, however, has not insisted on possession of the property, except as an incident authorizing him as the donee of the property to direct and control the manner of its use from and after the date of his purchase of the property by the conditions of his donation.

However liberal or generous his conduct may seem, we think its true value must be measured by what had transpired prior to the date of his purchase and the exact conditions that existed at that time. The mere fact that appellant Rone would not profit by this course of conduct is not conclusive of the rights of the appellees. Considered from that standpoint the first question that arises is would the appellees suffer an actual loss by reason of having relied, in error, upon the deed of conveyance, and also upon the conduct of the heirs of John Hitt, those who were in the actual possession and control of the adjacent property and who held the legal title thereto at the time of the conveyance to Rone.

The other proposition argued, that Rone was willing that the property should be used for church purposes, but insisted that it should be for the benefit and use of all denominations alike, is open to an equally serious objection, and that is that Rone, in the exercise of his generosity in releasing claims to the land did not have a right to take from the church organization its labor and property, represented in the building and bestow the same upon others.

The foregoing constitutes our analysis of the facts which we think are supported by all the evidence, and, at least, it is a proper construction to put upon their conduct.

In support of this proposition we should, perhaps, add that the four Hitt heirs, who are referred to as the two boys and the two girls, were in Arkansas and in the home community and knew what was going on while the structure was being erected sometime prior to their sale. None of them made any objection. None of them claimed adversely to the church organization. Otis Hitt on every

occasion has reaffirmed what his mother did, assisted in the construction of the building. Ernest Hitt changed his mind in order that he might help sell the property, but prior to that time he too had been in accord with the attempted grant of the property.

The law in this case, we think, has been concisely stated by that eminent authority Pomeroy, Equity Jurisprudence, 4th ed., Vol. 2, § 808, p. 1658, as follows: "The conduct creating the estoppel must be something which amounts either to a representation or a concealment of the existence of facts; and these facts must be material to the rights or interests of the party affected by the representation or concealment, and who claims the benefit of the estoppel. The conduct may consist of external acts, of language written or spoken, or of silence."

See, also, the same authority, § 818, p. 1680: "Acquiescence consisting of mere silence may also operate as a true estoppel in equity to preclude a party from asserting legal title and rights of property, real or personal, or rights of contract. The requisites of such estoppel have been described. A fradulent intention to deceive or mislead is not essential. All instances of this class, in equity, rest upon the principle: If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent."

Stated in another form we have this expression of the law: "Where a person stands by and sees another about to commit or in the course of committing an act infringing upon his rights and fails to assert his title or right, he will be estopped afterward to assert it." 21 C. J. 1152, § 155b.

So it must be concluded from the foregoing that it is not actually necessary that John Rone, the appellant, should have taken some inconsistent position in order that he should be estopped in this case, but from the foregoing we hold that if his predecessors in title, the Hitt heirs, are estopped then they could not and did not convey to Rone who knew the facts an indefeasible title. It has been held by this court that the vendee of one who is

estopped from granting title is also estopped. *Allen* v. *Daniel*, 94 Ark. 141, 126 S. W. 384; *Brownfield* v. *Bookout*, 147 Ark. 555, 228 S. W. 51.

It was announced in the last cited case that one who maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent.

It is but a repetition of what we have just quoted from Pomeroy.

Numerous authorities covering each phase of this case are sprinkled through our reports as a substantial part of the law of property in this state. *First National Bank* v. *Godbey & Sons*, 181 Ark. 1004, 29 S. W. 2d 272; *State ex rel. Independence County* v. *Citizens Bank and Trust Co.*, 119 Ark. 617, 178 S. W. 929; *Rogers* v. *Galloway Female College*, 64 Ark. 627, 44 S. W. 454; *Illinois Standard Mortg. Corp.* v. *Collins*, 187 Ark. 902, 63 S. W. 2d 342; *Fagan* v. *Stuttgart Normal Institute*, 91 Ark. 141, 120 S. W. 404; *Ferguson* v. *Guydon*, 148 Ark. 295, 230 S. W. 260; *Lacey* v. *Humphres*, 196 Ark. 72, 116 S. W. 2d 345.

Many other authorities might be cited materially and substantially to the same effect as the foregoing, but this would perhaps add nothing to our opinion as the authorities cited are sufficient to indicate the established principles.

It might be well to add that we have recently had under consideration, a contract for the sale of timber from a tract of land which constituted a homestead of the seller of this timber. His wife did not join in the timber deed. The husband collected the purchase money for the timber, aided in the cutting and removal of it, bought groceries and supplies and delivered them to his wife, with the money received and she knew the supplies had been so procured by the use of the purchase money of the timber, and she received from him benefits on account of the sale of the timber. She remained silent at all times until the timber had been cut and removed and then joined her husband in a suit asserting the invalidity of the conveyance and prayed for a second recovery which was not permitted. *Edwards* v. *Jones, ante* p. 229, 123 S. W. 2d 286.

480

From the foregoing it follows that the Chancellor's holding was correct.

Affirmed.