MERGENTHALER LINOTYPE COMPANY v. COLLEGE OF THE OZARKS.

4-5520     132 S. W. 2d 8

Opinion delivered October 9, 1939.

*E. B. Dillon* and *S. S. Jefferies,* for appellant.

*Paul McKennon, George O. Patterson* and *E. H. Patterson,* for appellee.

McHANEY, J. In August, 1923, appellant sold to Colin M. Threadgill and James L. Boyd, two linotype machines, one known as Model 5 and the other as Model 14, for a consideration largely on deferred monthly payments, for which they executed 68 notes for $65 each and one note for $1,734.30, the first of which became due and payable November 10, 1923, and one on the 10th of each month thereafter up to and including September 10, 1928. Threadgill and Boyd also executed and delivered to appellant at the same time a chattel mortgage on the two machines to secure the payment of the purchase money, which mortgage was duly recorded. The mortgage contained a provision requiring the written consent of the mortgagee (appellant) before there could be any valid sale of the machines by the mortgagors. It also provided that, if the mortgagors should "sell, assign, mortgage, or encumber said property or any part thereof, or any interest therein, or underlet or part with the possession of the same, either directly or indirectly" all unpaid notes should become due and payable and right of possession immediately to accrue.

Various trades and sales of the machines were thereafter made, but title thereto finally vested in Threadgill, subject to said mortgage.

In October, 1927, said Threadgill sold to appellee one of said machines, Model 5, and installed same in the print shop of the college, for a consideration of $1,900

of which $100 was paid in cash and six title retaining notes were taken by Threadgill from the college, dated November 1, 1927, to become due one each six months thereafter with interest at 6 per cent. These notes were thereafter paid by appellee to Threadgill, with the exception of a portion of the last note, $233.65, which was paid directly to appellant, at his request, sometime in 1931, after appellee had actual knowledge of the existence of said mortgage, which payment was credited by appellant on Threadgill's indebtedness on the other machine.

In January, 1932, appellant brought this action to foreclose its mortgage on both machines, making Threadgill, Boyd, and appellee defendants. Threadgill and Boyd made default and juagment was rendered against them for the balance due on their notes, and a foreclosure and sale were decreed as to machine, Model 14. Appellee defended on the ground that it had purchased Model 5 with the knowledge and tacit, if not actual, consent of appellant; that it had fully paid for same by payments to Threadgill, except the sum of $233.65 which was paid to appellant at its request; and that appellant was estopped to assert now the lien of its mortgage.

Machine, Model 14, was sold, appellant being the purchaser, for $1,800, which was credited on the balance due it by Threadgill and Boyd, and appellant sought the foreclosure and sale of Model 5 for the balance due after said credit. Trial resulted in a decree dismissing appellant's complaint as to Model 5 for want of equity, and in quieting and confirming title thereto in appellee. This appeal followed.

It is undisputed in this record that appellant knew of the sale of this Model 5 machine to appellee and the terms of sale, and implicitly, if not expressly, consented thereto. Under date of October 27, 1927, appellant's traveling representative, Elliott, wrote appellant, from Clarksville, Arkansas, a letter headed: *"Clarksville Ptg. Co.—C. M. Threadgill—Clarksville, Ark. College of the Ozarks—Clarksville, Ark."* In this letter he said:

"Mr. Threadgill has sold Model 5 linotype No. 9353 R. to the College of the Ozarks, at Clarksville, and the machine will be used in connection with printing instructions given by the school, and to do the institution's own work.

"The contract between Mr. Threadgill and the College has not been signed, but the machine was moved to the school last week, and Mr. Threadgill says the insurance was transferred to cover the new location. He said his insurance agent is sending New York the rider to be attached to the policy covering this machine.

"The only contract to be used in connection with this transfer will be Arkansas title-retaining notes, and I suggested to Mr. Threadgill that when he obtains these notes, properly signed by officers of the college, he deposit them with New York.

" 'Mr. Threadgill sold the Model 5, with extra mold, motor, extra magazine and font of mats, delivered and erected for $1,900. Payments have not been agreed upon except that $600 per year is to be paid on the machine. Whether this will be paid monthly, quarterly or semi-annually is yet to be decided.' After imparting some information about the college and its president and requesting that literature be sent to Prof. Stitt, instructor in printing, that would be of assistance in teaching linotype, especially three or four copies of 'Big Scheme of Simple Operation,' the letter concludes in two paragraphs as follows: 'As you know the Model 5 sold to the college, and the Model 14 Mr. Threadgill is using are included in the same contract, and under the same mortgage. As stated above Mr. Threadgill will obtain title-retaining notes on the Model 5, and deposit them with us for presentation to the college. As these notes are paid the proceeds are to be applied on the contract covering the two machines.'

"Mr. Threadgill is behind on his note account and agreed today to take up the November note and said he would try to work out, in the near future, some definite plan as to the overdue items."

This letter is conclusive of appellant's knowledge of the sale and all the substantial terms thereof. It also shows that "Threadgill will obtain title-retaining notes on the Model 5, and deposit them with us for presentation to the college." These notes were delivered to Threadgill, but were not deposited by him with appellant for collection.

On November 17, 1927, appellant wrote Threadgill in part as follows: "Our Mr. Elliott has advised us regarding the recent sale of the Model 5 linotype by you to the College of the Ozarks, who in turn have removed the machine to their premises. The provisions of our contract on the machine expressly provide that no attempt shall be made to sell, assign, remove, transfer or in any way encumber the property without our prior written consent. It is to be regretted that a breach of our contract occurred not only in respect to the transfer of interest, but also the removal. Should you desire to make similar changes in the future, it is essential that the conditions of the contract be strictly adhered to so that we may be assured our mutual interests are properly protected.

"In order that we may be in a position to grant our formal approval to the present status of the Model 5 linotype, may we ask that you forward us either the original or a certified copy of the bill of sale or such similar papers as may have been prepared to support the transfer to the College of the Ozarks. In the event, the original documents are sent us we shall promptly return them to you by registered mail upon completion of our examination."

This letter constitutes at least an informal approval of the sale, and its request for the original or a certified copy of the bill of sale or similar papers supporting the transfer to appellee, was for the purpose of giving its formal approval. It does not request that the title-retaining notes, mentioned in the letter to it of October 27, be sent to it for collection. Had it done so and the notes been sent to it, appellee would have been advised of ap-

pellant's rights in Model 5. It does not appear that appellant ever asked Threadgill for the notes, but only the bill of sale or other papers evidencing a transfer. Instead of taking this matter up with appellee, it was content to take Threadgill's word that the sale had not been completed and no papers signed or executed. Its representative so wrote it under date of August 7, 1928, acting on information obtained from Threadgill. Now, it occurs to us, as it, no doubt, did to the trial court, that, with the machine in appellee's hands, being used by it, appellant should have made inquiry of appellee as to its claim on this machine. Appellant was advised of the sale and the terms thereof. It knew the machine was delivered to and was being used by appellee. It stood silently by for about four years without demanding the purchase money notes, permitted appellee to pay Threadgill all the purchase price, except a portion of the last note, without a word to appellee that payment to Threadgill would be made at its peril. This too in the face of the fact that Elliott had suggested that the purchase money notes be deposited with appellant for presentation to the college. Under the facts and circumstances, appellant had no right to rely on Threadgill's word that the sale had not been completed. A simple inquiry from appellee would have disclosed the facts, and Elliott was in Clarksville frequently during this period of time, or a letter to appellee advising it of the facts would have afforded it an opportunity to protect itself.

The following from Mr. Pomeroy is quoted in *Bone v. Sawrey,* 197 Ark. 472, 123 S. W. 2d 524: "If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent." See, also, *Edwards* v. *Jones,* 197 Ark. 229, 123 S. W. 2d 286, and cases cited in both cases.

We think appellant is estopped by its conduct from now asserting the lien of its mortgage against said machine, and that the decree should be and is affirmed.