LACEY v. HUMPHRES.

4-5044

Opinion delivered April 25, 1938.

*Burke, Moore & Walker,* for appellants.

*John C. Sheffield,* for appellee.

McHANEY, J.   This is a suit in ejectment brought by appellants against appellee in which they claim ownership of the northeast quarter of section 3, township 5 south, range 2 east, containing 169.88 acres in Phillips county, Arkansas, and of which they seek to recover possession.   Appellants' title is based on a quitclaim deed from the Fourth & Pine Company, a corporation of St. Louis, Missouri, dated November 22, 1932, which deed covers a large body of other lands in said county.   Appellee defended on the ground that he was the owner of the lands and entitled to the possession thereof by virtue of a donation certificate from the state issued July 6, 1932, and a donation deed dated January 8, 1936, which deed was recorded July 11, 1936.   A further defense was that he had made valuable improvements on the land under the certificate and donation deed, and further that the lands in dispute were forfeited for the nonpayment of taxes for the year 1929, and at a time when the title thereto was in the Fourth & Pine Company; that said lands were sold to the state for the taxes of 1929 in the year 1930, and were certified to the state by the county clerk in June, 1932; that he was informed by the appellant, O. F. Lacey, the company's agent, that it had abandoned the lands and that he could acquire title thereto from the state either by purchase or by donation certificate; and that he acquired a donation certificate and later a deed was issued to him by the State Land Commissioner.   Trial to a jury resulted in a verdict and judgment in appellee's favor from which is this appeal.

It is conceded by both parties that the sale to the state was void and the court so instructed the jury. In doing so, the court used this language, which is one of the principal assignments of error on this appeal: "You are instructed that that tax sale was a void sale, that the state acquired no title to the land by virtue of the sale, and that you should find for the plaintiff for the possession of this land, unless you further find that Mr. Lacey, through his representations to Mr. Humphres that he could buy this land from the state, and the company whom he represented, probably would abandon the land and he could go there and buy it,—if you find that he made such statements, and such statements induced Mr. Humphres to go and purchase this land from the state, and that he entered upon the land and improved it without any knowledge of Mr. Lacey's ownership, and that Mr. Lacey stood by and permitted him to improve this land and gave him no notice that he owned the land, that he had bought outstanding title, then Mr. Lacey would be estopped from asserting any ownership of this land. But, if you find from the testimony that Mr. Lacey advised this defendant that he, also, had bought the land and asserted a right to it, and then, if this defendant went ahead and improved the land, then, he was doing it, in so far as the title is concerned, at his own risk. In that event, you should find for the plaintiff and fix the amount of improvements and taxes that you think the defendant would be entitled to recover after allowing all the rents and profits or whatever is shown by the plaintiff that defendant should have paid him for the possession of the land. In case the rents or profits would equal or exceed the amount expended on the place, then, of course, you would find for the plaintiff for the possession of the property. If you should find for the plaintiff,—that is,—for the possession of the property, the form of your verdict will be, 'We, the jury, find for the plaintiff for the possession of the land and fix the amount of improvements upon the place after deducting all the rents and profits and so on';—we will prepare the form of verdicts for you. If you find for the defendant, the only form will be, 'We, the jury, find for

the defendant.' That would give him possession of the property. He should not recover anything for his profits and improvements.

"The court instructed you if you find that this defendant went over there and bought the land after having been induced by the plaintiff to buy it, then the plaintiff could not go out and buy outstanding title, as the court told you, and assert his rights, but if the defendant went over on his own motion and was not acting upon the advice or any information and just bought it on his own initiative, then, of course, the plaintiff is entitled to recover for his land."

Appellants specifically objected to this instruction and also requested a directed verdict in their favor. They now say, for a reversal of the judgment, that this oral instruction was abstract, misleading and prejudicial.

It is undisputed in this record that appellant O. F. Lacey was the agent of the Fourth & Pine Company for the rental and sale of the land in controversy and the other land owned by said company. Appellee had rented a portion of the land in controversy from said Lacey for the year 1931. Sometime in the latter part of 1931, probably the latter part of December, appellee went to said appellant to see about renting the land for the year 1932, and according to appellee, the following conversation occurred: "I asked him about making a trade with him for the land for another year and he says, 'Now,' he says, 'that land is going to the state, the company is going to turn that down to the state in June,' and he says, 'In June it is going to the state,' and he says, 'I can't handle the land another year.' He said something about I might could if I could furnish myself, I might could go ahead and live on the place, that he was counting on getting the home place. I said, 'If it goes to the state, Mr. Lacey, can't a feller buy that land?' And he says, 'Yes, if it goes to the state, you can buy that land or donate it,' and he says, 'I am counting on the home place, myself.' "

The land was certified to the state in June, 1932, as above stated, and in July of that year, pursuant to the conversation with said appellant, he went to Little Rock

and donated the land in controversy. He says he acted upon his own advice in buying the land, but he also says that he knew nothing about donating land until he was told he could do so by said appellant. It is undisputed that shortly after he received his donation certificate, in August, he and his boys went upon said land and began clearing off the underbrush and debris caused by overflows; that he wrote the State Land Department requesting and received time until January 1, to begin occupancy of said land; that on and prior to January 1, 1933, he and his family moved upon the property and have continuously occupied it, improving it, cultivating it, repairing the buildings and otherwise developing it into a state of cultivation. During all this time, both appellants knew what he was doing in the premises. They knew that he was occupying same under a donation certificate, complying with the law with the view of making it his home and of finally obtaining whatever title the state had. Appellee did not know that appellant had bought the land or received a deed thereto from the Fourth & Pine Company, although appellants had received their deed and promptly recorded it in November, 1932. He was not required to take constructive notice of said deed because it was not in his chain of title. At no time did appellants exercise any acts of ownership over the land in controversy, except perhaps to instruct him not to move a negro tenant off the place, which is disputed. They did not demand or receive any rent from appellee. They did not pay any taxes on the land or attempt to acquire title from the state or to redeem under any of the depression acts of 1933 or 1934, passed for the purpose of inducing landowners to redeem from tax forfeitures and get the lands back upon the tax books. They stood by silently from November, 1932, the date of their deed, until shortly before this action was brought on January 8, 1937. Shortly before that date, they offered to buy said land from appellee for about $500 which was refused by him. This was the first notice that appellee had that appellants were claiming the title. Under this state of facts, we think the instruction above quoted was not abstract and

was not misleading or prejudicial. The same principle is involved in this case as was in that of *Thomas* v. *Spires*, 180 Ark. 671, 22 S. W. 2d 553. We there held that estoppel *in pais* is available in actions at law as well as in suits in equity, and "that estoppels *in pais* are called equitable estoppels because they arise upon facts which render their application, in the protection of rights, equitable and just, and that they are just as readily and fully recognized in courts of law as in courts of equity." We there further said: "The principle invoked is that a party who, by his acts, declarations or admissions, either deliberately or with wilful disregard of the interests of another, induces him to conduct or dealings which he would not have otherwise entered upon is estopped to assert his rights afterwards to the injury of the party so misled." *Jowers* v. *Phelps*, 33 Ark. 465, and *Merchants' & Planters' Bank* v. *Citizens' Bank*, 175 Ark. 417, 299 S. W. 753.

This principle is applicable here. To say the least, appellant Lacey encouraged appellee to buy or donate the land from the state, advising him that the owner would probably let it go to the state in June, 1932, and for that reason, he could not rent it to him. Appellants knew that appellee had donated this land. They knew that he entered upon it for the purpose of making improvements and that he moved his family thereon and had made it his home. Yet they stood by for more than four years without exercising any acts of ownership, during which time he made a home out of it and developed it from an apparently worthless piece of land to a valuable tract, and it would be difficult to compensate him by way of betterments for the improvements he has made. We think the court correctly submitted the question to the jury, and that the evidence was ample to justify the jury in returning the verdict it did.

A further contention for reversal is that the doctrine of estoppel does not apply to the facts in this case. What we have heretofore said, we think effectively disposes of this question. We do agree with appellants that the conversation between them and appellee, which occurred

during the month of December, 1931, and which has been set out hereinabove, standing alone, would not be sufficient to invoke the doctrine of estoppel, but when coupled with the further facts recited heretofore, they are sufficient to call forth the application of the doctrine, at least it was sufficient to take the question to the jury. Nor can we agree with appellants that the fact that they are husband and wife, and that the deed from the Fourth & Pine Company to them conveyed an estate by entirety can make any difference. Appellants lived in Elaine, nearby, and they both knew or should have known what appellee was doing in an effort to acquire title to this land. It was their duty to speak and their silence estops them.

We find no error, and the judgment is accordingly affirmed.