GAMBILL *v.* WILSON.

4-8198 202 S. W. 2d 185

Opinion delivered May 19, 1947.

*Barrett & Wheatley*, for appellant.

*Foster Clarke* and *Roy Penix*, for appellee.

SMITH, J. This is a suit in ejectment involving an eight-acre tract of land lying between the adjoining farms of appellant Gambill, defendant below, and appellee, Wilson, the plaintiff below. Inasmuch as the cause was heard with the consent of the parties by the court sitting as a jury, we must give the testimony tending to support the court's finding its highest probative value in determining the question of fact upon which the cause was decided, that is whether plaintiff was estopped to assert title. The court below held that he was not, and rendered judgment accordingly, and from that judgment is this appeal.

We, therefore, state the case as Wilson, the plaintiff, testified. He purchased a 200-acre tract of land and under a misapprehension as to its south boundary took possession of the land in litigation, cleared and cultivated it for a period of 10 years under claim of title, but he never at any time paid any taxes thereon. The land in question was assessed for taxation under the description: Pt. southwest quarter, northwest quarter, section 20, township 15 north, range 5 east, and was sold under that description for the non-payment of the 1928 general taxes. The land was certified to and purchased from the State by one Burton, and the deed to him employed the same defective description under which it had been sold for taxes, but Burton conveyed the land to Gambill under a correct description. Wilson knew nothing of the tax sale and the deed from the State until in February preceding the trial. He attempted to buy the land from Burton, who asked $400 for his deed, a price he was not willing to pay. Prior to this tax sale Gambill, who like Wilson was unaware of the correct line between their adjoining farms, attempted to buy the eight acres from Wilson, who declined to sell.

Gambill knew nothing about the tax deed until Wilson told him about it, and Wilson said to Gambill, "I'll see John [Burton]. If he won't let me have it you get it if you can. I ain't going to pay him $400 for it."

Gambill and Wilson had agreed to build and to divide the cost of a fence on the south side of the land, and this fence, if built, would have enclosed the land as a part of Wilson's farm. There had been no dispute as to the boundary line between Gambill and Wilson, but Wilson admitted that the tract in litigation was not a part of the land which he had purchased, and for which he had a deed, and he was aware of the fact "that it was cut off of Gambill's forty acres" before the occurrence of the incidents on which Gambill bases his plea of estoppel. Wilson admitted that he told Gambill that he was unable to trade with Burton, and that "for him

to go ahead and get it'' and Gambill then bought it from Burton for $300 and he had an abstract of the title made which cost him $25.

Now before either party was aware that Burton had obtained the deed from the State, they had bought the material to build a fence on the south side of the eight-acre tract. Gambill did obtain a deed from Burton and so advised Wilson, and they together proceeded to build a fence, not on the south line as originally intended, but on the north line, the result being that the eight-acre tract was enclosed and became a part of Gambill's farm.

Wilson testified that when he learned that the land to which he had no record title had been sold to the State for taxes, which he had not paid, he supposed he had lost the land and that as he was unable to trade with Burton he so advised Gambill, and that at his suggestion Gambill bought it. Later he was advised that he had not lost his title. This opinion was no doubt based upon the correct assumption that the deed from the State to Burton was void because of the defective description of the land and Wilson, after being so advised, brought this suit to recover possession of the land which had become a part of Gambill's farm by building the fence referred to. As has been said Wilson assisted Gambill in building the fence.

Wilson was correctly advised under the facts stated, that he had acquired title to the eight-acre tract by reason of his adverse possession, and further that the deed from the State was void because of the defective description of the land in that deed.

The judgment should therefore be affirmed unless under the facts stated Wilson has estopped himself to question the validity of the title, which according to his own admission he had induced Gambill to buy.

Numerous cases are cited and quoted from in the briefs of opposing counsel, and among others *Thomas v. Spires,* 180 Ark. 671, 22 S. W. 2d 553, and *Lacey v. Humphres,* 196 Ark. 72, 116 S. W. 2d 345, and it is upon

the second of these cases that Gambill chiefly relies. Each of these cases recognized and stated the law to be that the plea of estoppel *in pais* is available in actions at law as well as in suits in equity.

There is some similarity of facts in each of these cases to the instant case, in that one person had induced another to buy land. The plea of estoppel was sustained in the case last cited, but not in the first, and it is upon the case first cited that Wilson chiefly relies for affirmance of the judgment here appealed from.

In both cases there had been a forfeiture to the State for the non-payment of the taxes due thereon, and while it is true that the land owner in each case thought he had lost his land by reason of the forfeiture, there is a distinction between the case of *Thomas* v. *Spires, supra,* and the instant case. In the first case it was said that the testimony was sufficient to raise a question for the jury whether the land owner had induced the purchaser to buy upon the representation that he had abandoned all claim to the land, inasmuch as he had testified that it was his intention to keep the land if he could get someone to redeem it for him.

Here the testimony is undisputed that Wilson abandoned the land and placed Gambill in possession of it. He did this by assisting in building a fence which enclosed the land as a part of Gambill's farm. In this connection it may be said that according to the undisputed testimony, Wilson was advised soon after obtaining a deed to the 200 acres which he now owns, that his deed did not cover the eight acres here in litigation, and that it was in fact a part of the tract of land to which Gambill had title.

One Darr, a neighbor and friend of Wilson, was called by Wilson as a witness, and it was Darr who told Wilson that Burton had a deed to the eight-acre tract. Darr testified that he told Wilson about the deed and "He [Wilson] said he would as soon Burton had it [the land] as anybody else, as it was not his." Wilson admitted that he knew that the eight-acre tract was, as

he expressed it, ''cut off before Gambill bought it,'' but that Gambill had made no claim to it. In other words, the eight-acre tract had been a part of the land described in the deed under which Gambill acquired title to the land adjoining that of Wilson.

Wilson attempts to identify this case with the case of *Thomas* v. *Spires, supra,* and to distinguish it from the case of *Lacy* v. *Humphres, supra,* by saying that ''Wilson never at any time indicated that he was abandoning the land, and was not going to pay the taxes on it.'' But Wilson admitted that he never at any time paid the taxes on it, this for the reason, no doubt, that it was not included in the description of the land to which Wilson had a paper title. And the undisputed testimony shows that Wilson did abandon the eight-acre tract, and he did this by assisting in building a fence which separated the eight acres from his land and enclosed it as a part of Gambill's farm. After Gambill had purchased the eight acres from Burton, he and Wilson were uncertain as to the boundary line of this tract and they called Darr in to assist in locating the line, and the new fence was located in accordance with this survey.

The undisputed testimony shows that after telling Darr that the eight acres did not belong to him, and that he would as soon Burton had it as anyone else, Wilson advised Gambill that he had lost this land, and that it could be purchased by anyone willing to pay the price which Burton asked, but which he was unwilling to pay.

This is not a case where Gambill acted independently of Wilson, or where there was mere silence on Wilson's part when he should have spoken, but it is a case where Wilson induced Gambill to buy the land and this conduct on Wilson's part was voluntary and originated with Wilson and not with Gambill. Certainly Gambill did nothing to mislead Wilson, who was in full possession of all the facts and acted on his own judgment in suggesting that Gambill buy the land.

The briefs of opposing counsel cite many cases dealing with the question of estoppel *in pais* and a number

738

are cited in the case of *M & P Bank* v. *Citizens' Bank,* 175 Ark. 417, 299 S. W. 753. Chief Justice HART there quoted and approved the following statement from the case of *Trapnall* v. *Burton,* 24 Ark. 371: "A man is estopped when he has done some act which the policy of the law, or good faith, will not permit him to gainsay or deny; and when the principle of estoppel is understood, and unwise legislation or decision does not push the doctrine beyond reasonable limits, it is one of the wisest and most just and righteous doctrines of the law. The whole principle of equitable estoppel is that, when a man has deliberately done an act or said a thing, and another person, who had a right to do so, has relied on that act or word, and shaped his conduct accordingly, and will be injured if the former can repudiate the act or recall the word, it shall not be done; but, of whatever things the act was evidence, in the nature of things, and on ordinary principles, it shall be taken to be conclusive evidence; and what was said, the party shall not deny to have been true."

We conclude in the application of these legal principles to the facts herein recited that the judgment should have been rendered in appellant's favor. The judgment from which is this appeal will therefore be reversed, and the cause remanded with directions to set aside the judgment from which is this appeal, and dismiss the case.