COLLINS v. McCOY.

4-9368                                    236 S. W. 2d 442

Opinion delivered January 29, 1951.

Rehearing denied March 5, 1951.

*Will Shepherd,* for appellant.

*John Sherrill* and *Thomas J. Bonner,* for appellee.

GRIFFIN SMITH, Chief Justice. In June, 1942, Lots 17, 18, 19, and 20, Block B, Fletcher and Clark's Addition to Little Rock, were owned by Walthour-Flake Realty Company. The lots face south on East Third Street, but No. 20 "corners" on Fletcher street and is

therefore west of Lot 19. The controversy is over the line between Lots 19 and 20.

Before Walthour-Flake contracted to sell Lot 20 Joe Hamilton rented and occupied a small residence on it, spoken of as a shotgun house. Lots 17, 18, and 19 were then vacant. Whether Hamilton was placed in possession by Manie Schuman, whose tax title was dealt with in a Chancery proceeding by Walthour-Flake, or whether the successful party in that suit rented the house to this tenant, is not controlling here.

August 26, 1942, Nelson McCoy and his wife, Helen, contracted with Walthour-Flake for the purchase of Lot 19. They later acquired Lot 18, but title to it is not questioned. Eddie Collins—August 27, 1942—contracted to buy Lot 20. Payments were made in each instance and deeds were later executed, hence the grantor is not directly concerned here. Nelson McCoy died, and his wife Helen owns Lots 18 and 19. The McCoy home, built in 1943 partly on Lot 18 and partly on 19, is shaded during the summer months by a north-south row of mulberry trees set approximately 30 feet east of where appellee claims her true west boundary is. In 1944 Collins remodeled and later greatly enlarged the house on Lot 20, and in doing so he encroached about three feet on Lot 19 if the dividing line between 19 and 20 is where a surveyor who testified for appellee said it should be. Appellant insists that, before signing the contract to purchase, the line was shown him by Mr. Flake and two engineers—"and there was a man with two big books."

There is no substantial testimony that any part of the original house extended onto the area now claimed to be part of Lot 19. The first expedition over the disputed area occurred when the remodeling began in 1944. Appellant, however, contends that when Walthour-Flake pointed out the lines to him he then talked with Leon Flake of the real estate agency and by verbal commitment agreed to purchase. With this understanding he went into possession not as a renter, but as a purchaser whose contract was to be delivered in circumstances satisfactory to buyer and seller.

August 5th, 1949, appellee sought in a Chancery action to enjoin Collins from interfering with her possession of Lot 19. When a demurrer to the complaint was filed the plaintiff dismissed the suit without prejudice. On August 31 ejectment pleadings were filed. Appellant contends that the suit at law was not brought within seven years from Collins' entry under his contract, and that he relied upon the boundaries he says were pointed to.

By agreement a jury was dispensed with and all matters of law and fact were determined by Judge Amsler, whose decision was in favor of the owner of Lot 19. Appellant contends (a) that the factual issues were not sustained by substantial testimony, and (b) that the court erred in not granting a retrial because of newly-discovered evidence.

When we consider the trial court's right, where a jury has been waived, to pass upon the credibility of witnesses as a part of the judicial duty to ascertain what the facts are, the argument for a defendant's instructed verdict must fail. Appellant made contradictory statements regarding the time of his entry and flatly denied most of the essential testimony given by appellee concerning protests she made when encroachments occurred. Collins testified that the mulberry trees were in place and were bearing bushes when he bought Lot 20, while Helen McCoy says she planted them for shade purposes.

The trial court did not believe Collins' testimony that the line now contended for was pointed out to him by agents of the grantors, and the court took into consideration the fact that Walthour-Flake owned both of the lots when the transaction occurred and sold each by legal descriptions. A surveyor employed by appellee and one employed by appellant did not disagree in respect of the true line except that appellant's surveyor testified to street alterations and discussed resulting shifts if effect should be given these alterations.

Nor do we think the court abused its discretion in refusing to grant a new trial. In addition to three formal allegations usually found in such motions, appellant

alleged (1) that the cause should have been transferred to equity; (2) that the trial defendant's counsel did not know that Manie Schuman's son-in-law, Maurice W. Kaye, had rented Lot 20 while Schuman claimed it under his tax deed; that Walthour-Flake became the owner Dec. 23, 1941, and that the same tenant remained in the building; (3) that Harry Levinson, a former city engineer, told appellant's counsel after the trial that he (Levinson) was familiar with the addition in which the lots were situated and with the streets adjoining them, and that in his opinion the blue print used at the trial did not conform to the lines that would appropriately circumscribe the lots in question; (4) that after the trial J. D. Walthour of the real estate firm heretofore mentioned told the defendant's counsel that "the present fence and boundary line had existed for more than seven years, therefore Collins went into possession of the 30 feet in dispute; and, (5) that he (defendant's counsel) was not informed regarding a chancery suit filed in 1936 by Moorehead Wright, trustee, to foreclose a mortgage on Lots 17 and 20, and other property. J. R. Connor was appointed receiver and collected rentals on these lots through December, 1939, and later Manie Schuman made certain improvements, etc.

The Court did not err in refusing to transfer the cause to equity upon completion of the testimony because, as appellant alleged, the plea of estoppel was not available. The answer is that the defendant did not plead estoppel, or offer to do so. There was no suggestion that the answer should be amended.

Appellant must have known, from the nature of the pleadings and character of the controversy, that appellee would not admit that she negligently stood by while the construction was being done, or that she impliedly acquiesced in appellant's course of conduct; hence estoppel *in pais* was available to appellant. Certainly when the testimony developed he had an opportunity to ask permission to amend the answer. In *Lacey* v. *Humphres*, 196 Ark. 72, 116 S. W. 2d 345, Mr. Justice McHaney, speaking for the court, emphasized an old rule to the

effect that ". . . a party who, by his acts, declarations, or admissions, either deliberately or with wilful disregard of the interests of another, induces him to conduct or dealings which he would not have otherwise entered upon, is estopped to assert his rights afterwards to the injury of the party so misled". There was citation to an opinion written by Mr. Justice HART—*Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553. It has been held that the doctrine of estoppel necessarily implies the existence of some legal right which the party against whom it is asserted would, but for his conduct, fraud, or acquiescence, otherwise have been entitled to enforce. *Ketcham Mortgage Co.* v. *Walker,* (Texas Civil Appeals) 94 S. W. 2d 806.

An interesting discussion of estoppel *in pais,* involving ejectment, is the opinion of Mr. Justice SWAYNE: *Dickerson* v. *Colgrove,* 100 U. S. 578, 25 L. Ed. 618. Citations in support of the proposition that the plea is maintainable at law are to be found in 50 A. L. R., at p. 967.

A late expression of this court is *Gambill* v. *Wilson,* 211 Ark. 733, 202 S. W. 2d 185, opinion by Mr. Justice FRANK G. SMITH.

The court did not abuse its discretion in refusing a new trial because the former engineer, Levinson, thought the blue prints used at trial might be incorrect.

On the fourth assignment: that Walthour would testify regarding fences and boundary lines and their existence for more than seven years—appellant's counsel knew the source of his client's title and had every opportunity to inform himself regarding the particular matter now urged. The same principle applies to the foreclosure suit. The chain of title affecting Lot 20 was involved in the old action.

Other reasons were urged for a new trial, but none was of a character involving an abuse of discretion.

Affirmed.