## SHIELDS v. SMITH.

1. AGENT: *His declaration, when admissible.*
   The declarations of an agent, made in the course of his agency, and in relation thereto, are admissible against his principal.

2. ESTOPPEL: *By statement as to facts,*
   If one by his statements as to matters of fact, or as to his intended abandonment of existing rights, designedly induces another to

change his condition in reliance upon them, he will afterwards be estopped to deny the truth of his statements or to enforce his rights against his declared intention to abandon them.

APPEAL from *Pulaski* Chancery Court.
Hon. JOHN R. EAKIN, Chancellor.

*U. M. Rose*, for appellant:

The decree in the former suit (to which Smith was a party) settled the matter as between the parties and their privies. *Freeman on Judgments, secs.* 248–49 and 330.

The Chancellor improperly assumed that Fagan might be presumed, from his agency, to have the power to release the lien of the Hannibal Company.

Fagan had no power to act as agent for both companies, where their interests are not identical, or might be in conflict. *Story on Agency*, sec. 210; 17 *Barb.*, 132; 14 *N. Y.*, 85.

The burden of proof to prove the agents' power to do the act was on the party claiming under it. 17 *Ark.*, 173: 23 *Id.*, 413; *Id.*, 32; 5 *Trenton*, 337; 29 *Ark.*, 543; 24 *Ohio St.*, 67. Admissions of an agent to bind a principal are only admissible after an agency has been proved *aliunde*. 29 *Ark.*, 512; 2 *Wharton's Ev.*, sec. 1183.

The novation of the debt was not made, unless the Arkansas Insurance Company had assented to bind itself to the Hannibal Company. 2 *Chitty on Cont.*, 1380 *N.* 9.

Complainant claiming under the Arkansas Insurance Company has no equity, without showing that said company, or himself, has paid the debt assumed (if that be so). 23 *Ark.*, 704; 2 *Wheat*, 336; 6 *Peters*, 402; 17 *Howard*, 343; 7 *Wall.*, 416; 13 *Ark.*, 632; 32 *Ib.*, 533; 18 *Ib.*, 369.

One who has assumed payment of a mortgage cannot contest its validity. 1 *Jones on Mort.*, sec. 744; 44 *Ill*, 501; 15 *Iowa*, 407; 11 *Howard*, 521.

Shields v. Smith.

Complainant cannot succeed without showing or proving a written release as alleged; nor unless he has shown that he is in possession of the lands, or that the same are unoccupied.

*Wassell & Moore*, for appellee:

The mortgage given was a fraud upon Edward Fulton, and therefore should not be sustained.

It fully appears that there had been a compromise of all the matters involved in this case, including the settlement of this $1500 note and mortgage.

On question of dismissal of former bill see *Story's Eq. Pl.*, sec. 793; 7 *Johnson's Chancery Reports, p.* 1, and cases cited.

A power of attorney, for sale only, does not authorize a mortgage. 4 *Kansas*, 42; 3 *Hill*, 361; 1 *Hammond ( Ohio)* 232; 5 *Vesey, Jr.*, 211; 1 *Kansas*, 281; 4 *Kent's Com.*, pp. 331, 160. Generally as to agents' powers, see *Story on Agency*, secs. 59, 62, 66, 67, 69, 72, 76, 81, 83, 101, etc.; 8 *Ark.*, 227.

One dealing with an agent is chargeable with notice of his powers. 3 *Hill*, 262, 279.

CARUTH. S. J.   Smith filed his complaint in the Pulaski Chancery Court, in which he alleged that on the thirtieth April, 1873, he lent to the Arkansas Insurance Company $3115, for which he took a note, secured by mortgage on the lot in controversy. The Insurance Company took title by purchase from Edward Fulton and wife, Wm. H. Fulton and wife, and John Wassel and wife. The title came through Wassel, the other two deeds having been taken merely to satisfy all doubts. Wassel got his title from Wm. H. Fulton and Lavinia C., his wife, Mrs. Fulton having been the owner of the land. On the fifteenth Novem-

4—37

ber, 1865, Mrs. Fulton had executed a mortgage on the lot to Edward Fulton.

It is charged this was done under misrepresentations of her husband, and that it was never properly acknowledged by her.

On the twenty-sixth August, 1869, a bill was filed in the name of Edward Fulton, to foreclose that mortgage, under which a decree of foreclosure was rendered, and on May second, 1870, the lot was sold, and bought in the name of Edward Fulton, though without his knowledge.

In this suit, it is further alleged, there was no valid service on Mrs. Fulton. After this W. H. Fulton, who held a power of attorney from Edward Fulton, his brother, fraudulently, and in violation of his authority, made three notes, secured by deeds of trust on the lots as follows:

First note—to White & Dillon, July eighteenth, 1870; afterwards assigned to the Arkansas Insurance Company, the deed of trust being made to M. W. Benjamin.

Second note—to Merchants' National Bank; deed of trust to John W. Smith, trustee, January thirtieth, 1871.

Third note—for $1500, April twentieth, 1870, to the State Insurance Company, of Hannibal, Missouri, James F. Fagan, trustee.

These notes were for individual debts of W. H. Fulton.

Benjamin, as trustee, having advertised the lot for sale, Mrs. Fulton filed her complaint against her husband, Benjamin, Smith, Fagan, as trustees, and Edward Fulton, to enjoin the execution of the trusts, and a preliminary injunction was issued. In that complaint she alleged, substantially, that she executed the mortgage to Edward Fulton by reason of deceit and misrepresentation on the part of her husband; that it had never been legally acknowledged by her; that she had never been served with process in the foreclosure suit; and, in fact, never heard of it until

she saw her property advertised by Benjamin for sale, under his deed of trust.

Smith further alleged that the injunction suit of Mrs. Fulton was finally settled and compromised as follows:

The suit was to be dismissed; the deed of trust to the Merchants' National Bank was to be paid; the Arkansas Insurance Company was to assume the debt due to the State Insurance Company, and the deed of trust to the latter company was to be cancelled.

This agreement was made by all parties in interest, James F. Fagan, its agent, acting for the State Insurance Company. Inasmuch as Fulton was largely indebted to the Arkansas Insurance Company, it was also agreed that a clear title to the lot in controversy, and other valuable property, was to be made to that company.

The suit was then dismissed, the order showing that the suit had been compromised and settled between the various parties.

That order was entered March second, 1872. Nevertheless, Fagan, as trustee for the State Insurance Company, had advertised the lot for sale, under the deed of trust, at the instance of Shields, who had become the owner of the note. Both companies had become insolvent. Prayer for injunction, and that the deed of trust to Fagan be cancelled. Shields filed his answer and cross-bill, denying the alleged agreement to release the State Insurance Company's deed of trust, and the authority of Fagan to make any such contract so as to bind the company.

The cross-bill alleged that Fagan had removed from Pulaski county, and prayed for the appointment of another trustee.

To this answer certain interrogatories to be propounded to Smith were attached, all of which he answered on final hearing.

The Chancellor made the injunction perpetual, and decreed a cancellation as prayed.

To reverse that judgment this appeal is prosecuted.

1. AGENT: His declarations, when admissible. The evidence discloses the facts that James F. Fagan was the general agent of the State Insurance Company, at Little Rock, and as such he made the loan, which was secured by the deed of trust. and in which he was named as trustee. The fact of the general agency of Fagan is not denied by Shields ; but it is insisted that as such general agent he had no authority to make the settlement set out in the complaint. We are not called upon, however, to pass upon this question. The law is well settled that where the agency is otherwise established, as is the case here, the declarations of the agent, made in the course of his agency, and in relation thereto, are admissible as against his principal. Now, in this case, Fagan was not only the general agent of the company, but was its direct representative in the particular transaction, out of which the alleged settlement arose. He was entrusted with certain of the company's funds, for the purpose of loaning them out. He did so loan them out, and to secure that loan took a deed of trust, having himself named as trustee. Now, these facts being established, *ali-made*, we see no reason why his declarations, touching the agreement of the company to make the proposed settlement, are not competent. He did so declare to Wassel, and this declaration tends to show the agreement of his principal.

He does not prove his agency by such declaration ; that appears otherwise. But in view of the facts that his relation of agent still existed, he being the person representing the interest of the foreign insurance company, in and about the deed of trust, we are of the opinion that his declarations, under such circumstances, were competent to show the agreement of the company to the proposed settlement.

Mrs. Fulton was raising the question of the validity of

her acknowledgment of the mortgage to Edward Fulton, also of the decree of foreclosure. If she succeeded in those issues, then the deed of trust of the State Insurance Company would have been worthless. It is not at all singular that the Hannibal Company would accept the promise of payment by the Arkansas Insurance Company, then a solvent corporation, in lieu thereof; nor is it difficult to comprehend why the latter company would so assume it.

Wm. H. Fulton was indebted to it in a large sum of money. He and his wife owned this lot and other valuable property. If it could get a clear title, it could well afford to pay the $1,500 to the Missouri corporation. The whole matter seems simple enough, and the proof establishes the contract.

It is, however, urged that Smith had no equity in his bill, inasmuch as it was in the nature of a bill to remove a cloud upon the title, and he was simply mortgagee.

We do not so consider it. Smith was a party to that agreement as one of the defendants to Mrs. Fulton's suit. By that agreement, the deed of trust on this lot given to the State Insurance Company, was to be cancelled. Acting upon it, and believing it to have been done, he subsequently loaned a large sum of money on that security. The attempt to force this trust thereafter, by Fagan, was a direct fraud upon Smith's rights, an undertaking on his part to do that from which he was clearly estopped. In the case of *Union Mutual Insurance Co.* v. *Money*, 96 *U. S.*, the supreme court of the United States held as follows:

"The doctrine of estoppel is applied with respect to representations of a party to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party, who, by his statements as to matters of fact, or to his intended abandonment of existing rights, had designedly induced another to change

2. ESTOP-
PEL.
By statement as to facts, &c.

his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statement, or enforce his rights against his declared intention of abandonment."

There was a clear equity in this complaint, and the Chancellor properly made the injunction perpetual and decreed the cancellation of the deed of trust.

Let it be affirmed.