## DAVIS v. SHELBY.

### Opinion delivered November 25, 1918.

ESTOPPEL—REPRESENTATION.—Where a vendee of land, by his statement of his intended abandonment of his purchase thereof, induced another to buy the land from the vendor, he will be estopped to deny the truth of his statement or to enforce his rights against his declared intention of abandonment.

Appeal from Jefferson Chancery Court; *J. M. Elliott,* Chancellor; affirmed.

*Mehaffy, Reid, Donham & Mehaffy, Milton Wayman Guy* and *Fred A. Isgrig,* for appellant.

1. Appellant is the purchaser and owner of the lands and entitled to possession. His right is not defeated by the defeasance clause in the deed because the clause is void as being repugnant to the grant. 92 Ark. 324; Kirby's Digest, § 2745. Appellant was a *bona fide* purchaser under the proof. He paid his first note and the Levys and the Trust Company took possession of and disposed of his crop, which more than paid for the land.

2. Appellant is entitled to recover the rental value of the land from 1907 to 1918 with interest. The Shelbys do not come within the provisions of the Betterment Act but are liable for the entire rents because (1) the Betterment Act is a statute of limitation and (2) they went into possession and remained in possession *mala fide.* All remedial statutes must be construed together and all given full force and effect. Section 2756 does not repeal § § 5083 and 6167 by implication, nor is it in conflict with them and appellant is entitled to all his rents under § § 5083 and 6167. He is not barred nor estopped by his former suit. It was dismissed without prejudice. Betterment Act, § 2756, is a statute of limitation. 92 Ark. 173; 101 *Id.* 9. The chancery suit was commenced in 1909. He was entitled to dismiss without prejudice. Kirby's Digest, § § 6167, 5683. It was dismissed and this suit brought within the year, and appellant is entitled to recover rents for the entire period of occupancy because he arrested the three-year limitation by suit and its dismissal. Kirby's Digest, § 5083; 121 Ark. 454; 47 *Id.* 120; 96 *Id.* 181. The fact that he sought the wrong remedy does not bar or estop him as he dismissed that suit and filed a new one within the year. 23 Ark. 684, 690-1; 49 *Id.* 248; 13 *Id.* 269, 276; 17 *Id.* 533.

3. Appellees are not entitled to the Betterment Act, § 2756. It only applies to *bona fide* owners under color of

title. Kirby's Digest, § § 2754, 2756. The Shelbys knew that appellant had bought the land and had actual possession under claim of title. His deed was recorded and they had actual and record notice. Appellees are not *bona fide* occupants. 45 Ark. 410; 86 *Id.* 368; 92 *Id.* 173; 48 *Id.* 183; 67 *Id.* 184; 98 *Id.* 320. They were *mala fide* possessors and liable for all *mesne* profits. *Supra.* They had no color of title as they claim under one who had no title. 47 Ark. 528; 72 *Id.* 601; 67 *Id.* 184. They also had notice. *Supra.* They are liable for the rents and interest from the end of each year. Kirby's Digest, § 2747. 92 Ark. 173; 101 *Id.* 173; 101 *Id.* 9; 31 *Id.* 334.

4. They were not innocent purchasers. The Shelbys took no title from Gould and Gould took none from the Levys, because they had already conveyed to appellant. 92 Ark. 324; 87 *Id.* 360. The deed from Gould to the Shelbys was void. 75 Ark. 603. Appellant had the title and was entitled to recover. Kirby's Digest, § 2745. The Shelbys were not innocent purchasers, having notice. 33 Ark. 468; 63 *Id.* 289, 299, 300; 51 *Id.* 61; 89 *Id.* 19.

5. The plea of *res judicata* was improperly sustained. The judgment was void and not *res judicata,* 92 Ark. 324; 47 *Id.* 120; 62 *Id.* 439. The Jefferson Circuit Court was not a court of competent jurisdiction in the unlawful detainer suit. Title to land cannot be adjudicated in such a suit. Kirby's Digest, § 3648; 40 Ark. 192. The judgment was absolutely void, not voidable merely. Davis is not estopped by not appealing. Herman on Estoppel and Res Adjudicata, § § 49, 50-1. The Shelbys and Gould were not parties and a judgment binds only parties and privies. 53 Ark. 330; 64 *Id.* 330; *Ib.* 447; 87 *Id.* 418; 96 *Id.* 451; 75 *Id.* 1; 35 *Id.* 450; 96 *Id.* 540; 66 *Id.* 336. The Levys had no rights. 92 Ark. 324.

6. Appellant was not estopped by deed or conduct. 92 Ark. 324. Knowledge of the attorney is that of the client. Notice to an attorney acting for a purchaser is notice to the purchaser. 39 Cyc. 1762; 53 Ark. 242; 75 *Id.* 343; 94 *Id.* 503. There was no estoppel. 54 Ark. 456; 97 *Id.* 43; 54 *Id.* 508; 53 *Id.* 196; 80 *Id.* 409; 64 *Id.* 106; 10

R. C. L. 690, § 19. Gould was not misled by any statements of Davis. See further as to estoppel: 125 Ark. 441; 54 *Id*. 465; 62 *Id*. 316; 89 *Id*. 349. Appellees waived any lien they may have had. 25 Ark. 510; 30 *Id*. 172; 35 *Id*. 100; 46 *Id* 267. See as to inconsistent remedies, 64 Ark. 213; 76 *Id*. 273; 82 *Id*. 514; 82 *Id*. 347; 75 *Id*. 40; 76 *Id*. 344.

7. Under our statutes and decisions this action is not barred. 47 Ark. 120; 96 *Id*. 181; Kirby's Digest, § § 6167, 5083. Nor is he barred by the former suit as that was dismissed and a new suit brought within the year. 23 Ark. 684, 690, 691; 49 *Id*. 248; 13 *Id*. 269; *Ib*. 276; 17 *Id*. 533. Nor by adverse possession. Shelby's possession was not peaceable. 5 Pet. 402; 11 *Id*. 41; 7 Wheat. 59; 1 Enc. Ev. 640; 24 Ark. 371; 13 *Id*. 269; *Ib*. 276. The burden of proving adverse possession is on him who asserts it. 65 Ark. 622; 82 *Id*. 51; 43 *Id*. 486. See also as to adverse possession, 1 Enc. Ev. 685-6-7, 690; 61 Ark. 527; 22 *Id*. 79; 68 *Id*. 551; 43 *Id*. 486; 97 *Id*. 33; 79 *Id*. 109; 61 *Id*. 464; 57 *Id*. 97, 105.

8. In their former suit the Shelbys recognized the title of appellant. 80 Ark. 444; 70 *Id*. 49. The answer in the chancery suit admitted Davis' title. 43 Ark. 296; 73 *Id*. 221; *Ib*. 344; 74 *Id*. 417.

9. The plea of laches is not available. 96 Ark. 540; 89 *Id*. 19; 67 *Id*. 320; 88 *Id*. 395; 70 *Id*. 371.

10. See also 77 Ark. 379; 14 *Id*. 159; 31 *Id*. 678; Kirby's Digest, § 6167; 3 Ark. 491. The chancellor's findings are against the law and evidence. 91 Ark. 162; 71 *Id*. 614; 75 *Id*. 72; 84 *Id*. 349. Appellees are not consistent. 64 Ark. 213; Bigelow on Estoppel, 717-722; 32 Ark. 346; 57 *Id*. 632; 59 *Id*. 441; 63 *Id*. 268. That the grantors did not understand the legal effect of the language used is not ground of reformation. 46 Ark. 167; 49 *Id*. 425; 41 *Id*. 495; 79 *Id*. 256. Courts will not reform a deed at the instance of a stranger. 51 Ark. 390; 59 *Id*. 187; 11 *Id*. 120.

11. Appellees are not entitled to improvements and taxes. 92 Ark. 173; 101 *Id.* 9; 98 *Id.* 320; 45 *Id.* 410; 86 *Id.* 368; 48 *Id.* 183; 67 *Id.* 184.

12. Appellees took nothing under the deed from the Levys to Gould. Minnie B. Levy conveyed only a dower interest. 53 Ark. 53; 28 L. R. A. (N. S.) 873.

*Taylor, Jones & Taylor* and *Rowell & Alexander,* for appellees.

1. The deed to Davis was not notice. A court of competent jurisdiction had decided that the instrument was not a deed but a contract which Davis failed to comply with.

2. The judgment in the unlawful detainer suit is *res judicata.* 23 Cyc. 1253; 108 Ark. 574; 83 *Id.* 545; 116 *Id.* 416; 91 *Id.* 394; Herman on Estoppel and Res Judicata, 282-3, § 210, p. 232, § § 49, 50, 51, pp. 41-44; 103 Ark. 191; 52 *Id.* 160; 100 *Id.* 63. As to distinction between void and voidable, see 100 Pac. 515.

3. Appellant is estopped. 36 Ark. 96; 37 *Id.* 47; 125 *Id.* 146; 91 *Id.* 141; 131 *Id.* 77; Bigelow on Est. (3 ed.) 541-3 and notes; 2 Pom. Eq. Jur., § 804; Kirby's Digest, § 510; 126 Ark. 420.

4. The proof shows that the instrument as written through a mutual mistake did not express the contract as originally entered into. This mistake will be corrected and the instrument reformed to speak the truth. 2 Pom. Eq. Jur. § 845 p. 1488; 79 Ark. 592; 105 S. W. 572; 1 Pet. 1; 1 Story, Eq. 161; 2 Johns. Chy. 585; 98 Ark. 14; 145 Ill. 290; 34 Cyc. 938; 48 Ark. 498; 149 N. C. 62; 75 Ark. 240; 200 S. W. 139; 69 Ark. 496; 34 Cyc. 951; 33 Ark. 119. The proof of a mutual mistake is ample.

5. Laches and limitation properly pleaded and appellant is barred. 97 Ark. 19; 106 *Id.* 102; 78 *Id.* 7; Kirby's Digest, § 6313; 110 Ark. 39; 103 *Id.* 601; 85 *Id.* 144.

6. There is no error as to rents, profits, taxes, improvements, purchase money, etc. The chancellor's find-

ings are correct. No errors are pointed out and his findings should not be disturbed.

SMITH, J. The record in this case is a voluminous one, and many questions of fact of more or less relevancy are discussed in the elaborate briefs filed in the case. The controlling facts, however, may be summarized as follows:

On February 2, 1904, Mrs. M. B. Levy owned a tract of land in Jefferson County, and on that date, by her warranty deed, in which her husband joined, conveyed this land to the appellant, Jefferson Davis, for the sum of $5,000, to be paid in eight installments of $625, the first payment to be made November 1, 1904. The cash purchase price was $3,000, but, because of the length of time allowed for payment, $2,000 was added to include interest, profits, etc., but it was agreed that the notes were not to draw interest until after maturity. The testimony is conflicting as to the kind of instrument which should evidence the agreement, and it is contended by appellant Davis that no mistake was made in the preparation of the deed, and that the instrument executed was the instrument intended. On the other hand, it is insisted that the contract between the parties did not call for a deed, and that a mutual mistake was made in the execution of an instrument of that character, instead of a contract of lease with an option to purchase with an obligation to convey the land upon the completion of the payment of the purchase money. The instrument prepared, however, was an ordinary deed, with a clause of defeasance to the effect that the conveyance should become void in case the grantee failed to pay any installment of the purchase money when the same became due, and that, in the event of such default, the grantor should become the landlord and the grantee would become the tenant of the grantor, but, in the event the purchase money should be subsequently paid, the grantee would be entitled to credit for such payments as purchase money.

The appellant paid only one note, but he raised a crop during the year 1905. In the meantime Mrs. Levy had sold the notes to the Pine Bluff Trust Company,

through the aid of Judge James Gould, who, to induce
the trust company to purchase them, had guaranteed their
payment. And in March, 1906, the Levys and the trust
company joined as plaintiffs in an action of unlawful de-
tainer to recover the possession of the land. In this suit
it was alleged that the nonpayment of the note due in
November, 1905, had defeated the deed, and that Davis
thereupon became a tenant. No defense was made to this
suit, and a default judgment was obtained for the posses-
sion of the land, but damages for the rents were waived.
In the present litigation, much testimony was taken as to
the value and disposition of this crop.

In September, 1906, a writ of possession issued, and
Judge Gould, who was then the sheriff, caused Davis to
be dispossessed. Just here the testimony becomes ir-
reconcilably conflicting. Judge Gould testified that when
he took charge of the land and crop, he called on Davis
to perform his contract of purchase, and offered to assist
him in doing so, and also offered to assist him in securing
advances to enable him to make a crop the ensuing year.
But Davis refused to proceed with his contract, and
announced his intention to abandon any claim he had to
the land . This testimony was contradicted by Davis, who
stated that he never abandoned his claim to the land, but,
on the contrary, he has asserted his title to the land at all
times and to the extent of his ability has attempted to
enforce this title. Judge Gould obtained a deed to this
land from the Levys in April, 1907, and in June of that
year, conveyed it to George A., C. B. and W. J. Shelby,
who immediately went into the possession of the land, and
have since continuously claimed title thereto.

While the unlawful detainer case was pending, an-
other suit was filed in the chancery court by the trust com-
pany and the Levys against one J. S. McDonnell to en-
force a landlord's lien on the crop grown by Davis during
the year 1905 and which Davis had disposed of to McDon-
nell. This suit was brought upon the theory that Davis
was a tenant in possession under a contract of purchase
whose tenancy had expired by reason of the failure to

make the payments contracted for. During the progress of this litigation, the trust company reassigned the notes to the Levys, this being done, apparently, because of the non-assignability of the landlord's lien. There was a decree in favor of McDonnell, which was affirmed by this court upon appeal, the court holding that the sale from Mrs. Levy was complete upon the execution of the deed, and that the stipulation therein contained that if the vendee failed to pay the purchase money the conveyance should be void and the vendee should be liable thereafter in the sum named as rent to be paid annually, was a repugnant condition and therefore void. See *Levy* v. *McDonnell*, 92 Ark. 324.

In April, 1909, appellant Davis filed suit in the chancery court to recover the land and to have the value of the 1905 crop ascertained and applied to the payment of the purchase price. An answer was filed which put in issue all the material allegations of the complaint. While some depositions were taken, that cause appears never to have been prepared for trial, and, finally, in January, 1912, the court made an order that it "be dropped from the docket, with leave to reinstate." Three years later, or in June, 1915, Davis filed a motion to reinstate the cause, and an order to that effect was made, whereupon the cause was redocketed and then dismissed. There is conflicting testimony concerning the circumstances under and the purposes for which the court made the order restoring the cause to the docket.

After dismissing this chancery suit, Davis brought suit in ejectment against George A. and C. B. Shelby and the devisees of W. J. Shelby, who had died in the meantime. Over appellant's objection, Judge Gould was made a party defendant, and he filed an answer and cross complaint, and the cause was transferred to the chancery court.

The decree contains findings of fact that the Shelbys were innocent purchasers of the land; that the plea of *res judicata* should be sustained; that Davis was estopped from asserting any claim to the land; that the

cause of action was barred by limitations; that the order of the chancery court made and entered January, 1912, retiring the cause there pending from the docket with leave to reinstate, was in effect a dismissal of the suit without prejudice, and that the suit was reinstated on January 5, 1915, only for the purpose of entering a formal order dismissing it, and that Davis was not entitled to recover the land or any rents or profits derived therefrom. The decree also granting the prayer of the cross complaint for reformation of the original contract for the sale of the land, so as to express an agreement on the part of Levy and his wife to sell the land to Davis upon the condition that all of the purchase money should be paid at the time and in the manner therein expressed, and that the relationship of landlord and tenant should exist until all such payments had been made.

Much testimony was heard upon each of these findings, but no useful purpose would be served in setting it out, as we have concluded that the finding of the court below that Davis by his conduct had estopped himself to maintain this suit is not clearly against the preponderance of the evidence, and it becomes unimportant, therefore, to determine the correctness of the other findings of fact.

It is shown that Judge Gould became connected with this transaction by his action in assisting the Levys to sell the purchase money notes to the trust company, and that he had guaranteed the payment of the notes. The testimony also shows that Davis had abandoned his claim of title to this land after he had defaulted in the second payment until the decision of this court in the case of *Levy* v. *McDonnell, supra.* But, before the decision in that case, a judgment had been rendered by default in the circuit court in the unlawful detainer case, and, as a result of the judgment in this action of unlawful detainer, Judge Gould was called upon to make good his guaranty to the bank. It is insisted that this is not true, because the trust company, through Judge Gould, had endorsed the notes back to Mrs. Levy without recourse,

but this endorsement is explained as having been made to reassign the landlord's lien which the parties through Mrs. Levy had under the terms of the deed by reason of Davis' default in his payments. Judge Gould testified that he did not want the land, and that he asked Davis to perform his contract, and offered to assist him in doing so, and Col. S. M. Taylor, who was of counsel in the case, fully corroborated that testimony. Judge Gould's attitude, then, was that, to make himself whole, or as nearly so as possible, he had the Levys convey the land to him, and he later sold, as stated above, to the Shelbys. It is fairly inferable, from all the testimony in the case, that, at the time of the execution of the deed to Gould by the Levys, Davis did not then regard himself as the owner of the land, and that both he and Judge Gould, as well as the Levys, believed that Davis had forfeited his rights by his default in meeting his payments and by suffering judgment to go against him by default in the unlawful detainer case. As has been stated, Davis denies this, but we think the testimony warrants the finding which the court made.

Under the facts stated, we are of the opinion that Davis should not now be heard to question the Shelbys' title.

In the case of *Shields* v. *Smith,* 37 Ark. 47, this court quoted with approval from the case of *Union Mutual Insurance Co.* v. *Mowry,* 6 Otto 544, the following statement of the law: "The doctrine of estoppel is applied with respect to representations of a party to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party, who, by his statements as to matters of fact, or to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statement, or enforce his rights against his declared intention of abandonment."

See also, *Baker-McGrew Co.* v. *Union Seed & Fertilizer Co.*, 125 Ark. 146; *Fagan* v. *Stuttgart Normal Institute*, 91 Ark. 141; *Thompson* v. *Wilhite*, 131 Ark. 77.

The decree of the chancellor will, therefore, be affirmed.