ROGERS v. HILL.

4-9239                                    232 S. W. 2d 443

Opinion delivered July 3, 1950.

Rehearing denied October 2, 1950.

620

*Bon McCourtney* and *Claude B. Brinton,* for appellant.

*Barrett, Wheatley & Smith,* for appellee.

DUNAWAY, J. Appellant Rogers, defendant below, appeals from a verdict and judgment in favor of appellees, plaintiffs below, in an unlawful detainer action involving certain farm lands in Craighead County.

Rogers was in possession of the premises during the crop year 1949 as a tenant of the owner, Neal Green. Appellees, who are brothers, entered into negotiations with Green in November, 1949, for the purchase of this farm. Appellees are farmers who had been renting other lands as tenants, and who desired to buy the farm now in litigation for their home. During the negotiations the question arose whether Green could deliver possession on January 1, 1950, so he and the appellees went to the farm to discuss the matter with appellant. This much is undisputed, but the testimony is conflicting as to the conversation that ensued.

Green admitted that prior to the negotiations for sale, he had discussed with appellant his renting the land for 1950. The testimony of Green and the Hill brothers was to the effect that appellant was advised of the proposed sale to appellees, and that it was contingent upon their getting possession on January 1, 1950. These witnesses testified further that appellant stated unconditionally that he would move, and that they should go

ahead with the sale. Acting in reliance upon appellant's assurance that he would cause no trouble, appellees purchased the land from Green on November 29, 1949. They immediately notified their landlord that they were giving up the lands they were then farming.

On being informed that appellant would not vacate the premises, appellees on December 20, 1949, caused a notice to be served on him, demanding possession by January 1, 1950. On January 3, 1950, a three day notice to vacate was served on appellant, and on January 7, 1950, this action was begun.

Appellant answered, asserting right to possession under an oral lease with Green for the year 1950. In their reply, appellees pleaded estoppel against appellant on the basis of his statements made to them before their purchase and upon which they relied in going ahead with the purchase and giving up possession of the lands they had been renting.

It is conceded that appellees can prevail in this lawsuit only if appellant is estopped to assert his rights under his lease with Green, it being admitted that the required notice to terminate a lease from year to year had not been given. The cause was submitted to the jury on the issue of estoppel alone.

The doctrine of estoppel *in pais* was early recognized in decisions of this court and is available as a defense to a claimed right either at law or in equity. See *Gambill* v. *Wilson,* 211 Ark. 733, 202 S. W. 2d 185. In the recent case of *Williams* v. *Davis,* 211 Ark. 725, 202 S. W. 2d 205, we quoted with approval, at p. 731, this statement in *Jowers* v. *Phelps,* 33 Ark. 465: "Estoppels *in pais,* depend upon facts, which are rarely in any two cases precisely the same. The principle upon which they are applied is clear and well defined. A party who by his acts, declarations, or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which he would not have entered upon but for

this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so misled.''

Although the appellant and other witnesses in his behalf testified that his promise to move from the Green farm was conditional upon a satisfactory settlement with Green, this was contradicted by the testimony of appellees and Green. This disputed question of fact was for the jury to determine.

Harry B. Hill, one of the appellees, testified as follows: ''Mr. Green said: 'Mr. Rogers, I have got a chance to sell this land to these boys. They want to buy it, but they won't buy it unless I give them possession of it. I came out to see you folks and see if you will agree to move and give these boys possession of the place the first of the year.' Mr. Rogers dropped his head down and looked at the ground a few moments and said: 'Mr. Green, you've really been good to us. I don't want to stand in the way of you selling this place. You go right ahead and sell it. I will find me a place and move to it and give possession. I won't give you one minute's trouble.' Mr. Green said again 'I didn't know how you folks would feel. I told them I wouldn't sell it until we knew.' Mr. Rogers said 'That's all right, Mr. Green. Go right ahead and sell the place. I will find a place somewhere. I won't give you one minute's trouble.' Mrs. Rogers spoke up and said 'No; you've been good to us, Mr. Green. We don't want to stand in the way of you selling the place.' She said 'If the place is going to sell I would rather have these boys have it than any other.' I spoke up and said, 'Cecil, you understand we are buying the place for a home to move to the first of the year?' He said 'Yes, sir. I'm glad to see you boys get this place. I just wish I had the money to buy it myself, you wouldn't have had a chance at it. I can find me a place and give you possession. I won't give you no trouble.' ''

The situation in the case at bar is similar to the one considered by this court in *Trapnall* v. *Burton*, 24 Ark. 371, where we said at p. 399: ''If a person who has the claim to, or is the owner of, property real or personal,

stands by and permits it to be sold, without giving notice
of or asserting his right, he is estopped from setting up
his claim or title, against the purchaser.'' In that case
Trapnall had bought certain real property at a sheriff's
sale under execution against one Hawkins and there was
pending a suit between the two. The land was desired
as the site on which to erect a school.

To quote further from our opinion in that case at
page 400: ''When the trustees were about purchasing
the west half of the northeast quarter, . . . they
knew of Trapnall's claim, and of his then pending suit.
They informed him of the intended purchase, he him-
self being warmly interested in the enterprise of estab-
lishing the college. They told him that they should not
purchase, if he intended enforcing his claim. He told
them that he neither wanted or expected to recover the
land itself, but to compel the payment of a sum of money
due by Hawkins, . . . . He declared that he would
place no obstacle in the way of the purchase. The trustees
believed him, and relying on these assurances made the
purchase.''

On the basis of Trapnall's assurances that he did not
intend to enforce his claim against the land, we held that
there was an estoppel against a subsequent effort by his
heirs to enforce it after the trustees had bought the
property.

In the instant case the appellees went to appellant
for the specific purpose of finding out whether he was
claiming a lease for 1950 on the farm they wished to pur-
chase. They informed him that they would not buy the
property unless they could get possession and move onto
the place on January 1, 1950. Although he did not say
in so many words that he did not have a lease, appellant
did, according to appellees' testimony, in effect say that
he was not claiming right to possession under any lease.
His statements, as above set out in detail, certainly
amounted to a present representation that he was not as-
serting any right to possession for the year 1950. Acting
in reliance on appellant's declarations, appellees to their

detriment were left without a place to farm for the year 1950.

The facts in this case bring it within the rule approved by this court in *Shields* v. *Smith*, 37 Ark. 47 (at p. 53) : "The doctrine of estoppel is applied with respect to representations of a party to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party, who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statement, or enforce his rights against his declared intention of abandonment."

Appellant also argues that even if the testimony was sufficient to warrant submission of the question of estoppel to the jury, the court's instructions as to this issue were erroneous. The following instructions, among others, were given:

"2. It is admitted that the defendant Rogers had a contract with Green by which he was to occupy the land during 1950, but plaintiffs contend that Rogers agreed prior to the purchase of the land by the plaintiffs to surrender the possession on or before January 1st, and that he is now estopped by reason of his agreement to claim any right to possession for the year 1950.

"3. If you find from the evidence in this case that the defendant Rogers, prior to the purchase of the land by the plaintiffs, agreed unconditionally to surrender the possession thereof on or before January 1st, 1950, then your verdict in this case should be for the plaintiffs."

A general objection was made to instruction No. 2 but no objection was made to instruction No. 3. The instruction objected to was a proper instruction, and in the absence of any objection to instruction No. 3, appellant cannot now complain that it did not fully cover all the elements necessary for the creation of an estoppel.

We have considered appellant's requested instructions and agreed that they were properly refused by the trial court.

Appellant's final contention is that the trial court improperly permitted the witness Neal Green to testify concerning certain litigation between him and appellant involving cotton grown in 1949. It appears that the court allowed this testimony in explanation of references made to the litigation in the opening statement of counsel for appellant. Since appellant injected this matter into the lawsuit, he cannot complain that the court permitted Green to explain the nature of his legal controversy with his former tenant.

The judgment is affirmed and an immediate mandate ordered.

Mr. Justice Leflar concurs.