# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2117

_____

| | | |
|---|---|---|
| Frederick S. Wetzel, III, Trustee | * | |
| | * | |
| G. Latta Bachelor, successor | * | |
| Personal Representative of the Estate | * | |
| of Ronald E. Reagan, | * | Appeals from the United States |
| | * | District Court for the |
| Appellant, | * | Western District of Arkansas. |
| | * | |
| v. | * | [PUBLISHED] |
| | * | |
| Regions Bank; Cheryl A. Reagan, | * | |
| | * | |
| Appellees. | * | |

_____

No. 10-2123

_____

| | |
|---|---|
| Frederick S. Wetzel, III, Trustee, | * |
| | * |
| Appellant, | * |
| | * |
| G. Latta Bachelor, successor | * |
| Personal Representative of the Estate | * |
| of Ronald E. Reagan, | * |
| | * |
| v. | * |
| | * |
| Regions Bank; Cheryl A. Reagan, | * |
| | * |
| Appellees. | * |

_____

Submitted: May 9, 2011
Filed: August 12, 2011

_____

Before MELLOY, BOWMAN, and BENTON, Circuit Judges.

_____

PER CURIAM.

Frederick Wetzel, the trustee of Cheryl Reagan's bankruptcy estate, and Latta Bachelor, the personal representative of Ronald Reagan's probate estate, appeal from an order of the District Court[1] affirming the judgment of the Bankruptcy Court[2] in this interpleader and declaratory-judgment action filed by Regions Bank. We affirm.

Ronald Reagan (Ronald) died February 1, 2000, leaving an estate valued at almost $20 million. Ronald's will created a testamentary trust (Trust C) for the benefit of his wife Cheryl Reagan (Cheryl). Trust C included a spendthrift provision,[3] which stated:

> Except as otherwise provided herein, all payments of principal and income payable, or to become payable, to the beneficiary of any trust created hereunder shall not be subject to anticipation, assignment, pledge, sale or transfer in any manner, nor shall any said beneficiary have the power to anticipate or encumber such interest, nor shall such

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

[2]The Honorable Ben T. Barry, United States Bankruptcy Judge for the Western District of Arkansas.

[3]A spendthrift trust is intended "to provide a fund for the maintenance of a beneficiary and at the same time to secure the fund against his improvidence or incapacity . . . . Most states permit spendthrift trust provisions that prohibit creditors from attaching a spendthrift trust." Law Dictionary 1400 (6th ed. 1990).

-2-

interest, while in the possession of my Executor or Trustee, be liable for, or subject to, the debts, contracts, obligation, liabilities or torts of any beneficiary.

J.A. 180–81.

Under the terms of Trust C, commencing with Ronald's death, Cheryl was to receive distributions of the net income generated by the corpus of Trust C. The distributions were to be paid at least quarterly and were to continue for Cheryl's lifetime. After Cheryl's death, Ronald's two sons from a previous marriage were to receive the corpus of Trust C.

Ronald's will also named Cheryl as executrix of his estate and directed her, in that capacity, to fund Trust C by transferring Ronald's stock in Chem-Fab Corporation (less certain deductions not relevant here) to the trustee of Trust C, Regions Bank.[4] Contrary to the instructions in the will, however, Cheryl did not transfer the Chem-Fab stock to Regions, nor did she fund Trust C with the proceeds from the sale of the stock. Instead, when the Chem-Fab stock was sold shortly after Ronald's death for about $13 million, Cheryl used those proceeds to finance a series of unsuccessful business ventures.

On April 23, 2004, more than four years after Ronald's death, one of Ronald's sons filed an ex parte petition with the Circuit Court of Garland County, Arkansas (the probate court), and on May 11, 2004, the court permanently froze the remaining assets of Ronald's estate. On November 17, 2004, Cheryl filed a voluntary Chapter 11 bankruptcy petition. In June 2006, the probate court removed Cheryl as executrix of Ronald's estate and appointed Bachelor as the estate's successor personal representative. In April 2007, the Bankruptcy Court lifted the automatic stay in

---

[4]The trustee named in Ronald's will was Arkansas Bank & Trust, which was later acquired by Regions Bank.

Cheryl's bankruptcy case, allowing the final administration of Ronald's estate in the probate court to proceed. Shortly thereafter, the Bankruptcy Court appointed Wetzel as the trustee in Cheryl's bankruptcy case. On January 15, 2008, the probate court authorized Bachelor to fund Trust C in the initial amount of $2.4 million in cash and certain investments still held by Ronald's estate and to transfer title of Trust C to Regions, the trustee named in Ronald's will.

On September 23, 2008, as Trust C began to generate income from its initial funding, Regions filed an interpleader and declaratory-judgment action in the Bankruptcy Court, asking the court to decide which of two defendants, Cheryl as the income beneficiary of Trust C or Wetzel as the trustee of Cheryl's bankruptcy estate, was entitled to the distributions of net income from Trust C. Bachelor, as the personal representative of Ronald's estate and a creditor in Cheryl's bankruptcy case, successfully petitioned to intervene in Regions's action. Bachelor asserted two claims in Cheryl's bankruptcy case. The first claim was based on Cheryl's "defalcation as executrix" and was eventually liquidated in a settlement agreement between the parties for approximately $5.6 million. Br. of Appellants at 14. As part of the settlement, Bachelor agreed that he would not attempt to collect this amount from the distributions to Cheryl of net income from Trust C.[5] Bachelor's second claim against Cheryl arose from the settlement of a civil action he had filed against 1919M Street Associates, LP (1919M). Earlier, 1919M had obtained a roughly $1.5 million judgment against Cheryl in connection with a failed business deal, and Bachelor had accepted an assignment of 1919M's judgment against Cheryl as "payment" under a settlement agreement with 1919M. Bachelor was not prohibited from attempting to collect this amount from the distributions to Cheryl of net income from Trust C.

---

[5]The settlement document provides that Bachelor "agrees not to offset [his] claim against any future or current trust income or other income due the debtor or her bankruptcy estate." J.A. 238.

Ruling on Regions's interpleader and declaratory-judgment action, the Bankruptcy Court held that because Trust C included a spendthrift provision, Cheryl's "interest in net income distributions [from Trust C] is not property of the bankruptcy estate." Bankr. Ct. Op. of July 21, 2009, at 2. The court ordered that the interpleaded funds be distributed to Cheryl and not to Wetzel, her bankruptcy trustee.

Bachelor and Wetzel appealed to the District Court, which affirmed the judgment of the Bankruptcy Court. Wetzel v. Regions Bank (In re Reagan), 433 B.R. 263 (W.D. Ark. 2010). On appeal to this court, Appellants argue that Cheryl's behavior as executrix of Ronald's estate should render the otherwise valid spendthrift provision in Ronald's will unenforceable under Arkansas law and thus unenforceable under bankruptcy law, thereby permitting Wetzel to seize for the bankruptcy estate the distributions of net income from Trust C that would otherwise be payable to Cheryl. Appellants also argue that the Bankruptcy Court improperly concluded that distributions of net income from Trust C, once paid to Cheryl, are exempt from execution under Arkansas law.

As a second court of review in this bankruptcy matter, we apply the same standards of review as the District Court, "reviewing the [B]ankruptcy [C]ourt's factual findings for clear error and its conclusions of law de novo." Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan v. Killips (In re M & S Grading, Inc.), 526 F.3d 363, 367 (8th Cir. 2008).

Regions asked the Bankruptcy Court to address a single issue: Whether Cheryl or the trustee of her bankruptcy estate is entitled to the distributions of net income from Trust C. The issue turns on whether Cheryl's interest in the net income from Trust C is property of her bankruptcy estate. While federal law controls whether the interest is property of Cheryl's bankruptcy estate, Arkansas law defines the nature and extent of that interest. See Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004); N.S. Garrott & Sons v. Union

Planters Nat'l Bank (In re N.S. Garrott & Sons), 772 F.2d 462, 466 (8th Cir. 1985) ("The nature and extent of the debtor's interest in property are determined by state law . . . [but] once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.").

Section 541(a)(1) of the federal bankruptcy code defines a bankruptcy "estate" to include "all legal or equitable interests of the debtor in property as of the commencement" of the bankruptcy case, subject to some exceptions. 11 U.S.C. § 541(a)(1). Under Arkansas law, the income beneficiary of a trust has an interest in trust property "begin[ning] on the date specified in the terms of the trust." Ark. Code Ann. § 28-70-301(a) (2004). Here, Ronald's will stated that Cheryl was entitled to receive distributions of net income from Trust C beginning on the date of his death on February 1, 2000. When Cheryl filed her bankruptcy petition in November 2004, her interest in the distributions of net income from Trust C had been vested for several years, even though no income was generated by the trust until it was funded in 2008. The distributions of net income from Trust C were contingent on the trust producing income, but contingent interests of a debtor at the time of his bankruptcy filing are property of the bankruptcy estate. See Law v. Stover (In re Law), 336 B.R. 780, 782 (B.A.P. 8th Cir. 2006) ("Property of the estate includes contingent interests in future payments.").

Thus under federal and Arkansas law, Cheryl's interest in the net income from Trust C would be property of her bankruptcy estate under § 541(a)(1) unless an exception applies. One such exception is described in § 541(c)(2), which provides that if there is a "restriction on the transfer of a beneficial interest of the debtor in a trust" and such restriction "is enforceable under applicable nonbankruptcy law," the restriction is also enforceable under federal bankruptcy law. 11 U.S.C. § 541(c)(2). Appellants do not dispute that a valid spendthrift provision in a trust instrument is a "restriction on the transfer of a beneficial interest." Nor do they dispute that Arkansas law is "applicable nonbankruptcy law." Thus, if Trust C's spendthrift provision

restricts the transfer of Cheryl's interest in the distributions of net income from Trust C and the spendthrift provision is enforceable under Arkansas law, then Cheryl's interest in the distributions of net income from Trust C is not property of her bankruptcy estate.

The Bankruptcy Court reasoned that because Trust C's spendthrift provision restricts both voluntary and involuntary transfers of Cheryl's interest in the distributions of net income from Trust C, the restriction is valid and enforceable under Arkansas law. See Ark. Code Ann. § 28-73-502(a) (Supp. 2009) ("A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest."). And because the spendthrift provision is valid under Arkansas law, the court held that the § 541(c)(2) exception applies and Cheryl's interest in the distributions of net income from Trust C is not property of her bankruptcy estate under that exception. Furthermore, the court concluded that because Cheryl's interest in the distributions of net income from Trust C is not part of her bankruptcy estate, the payments actually made on account of that interest are likewise not part of her bankruptcy estate. Bankr. Ct. Op. of July 21, 2009, at 9–10 (holding that "the distributions of net income are also not a part of the debtor's estate after they are distributed to the debtor" because they "result from an interest this Court has determined is not property of the estate").

On appeal, Appellants first argue that Cheryl's misconduct as executrix of Ronald's estate invalidated the spendthrift provision. They contend that because Cheryl improperly exercised control over trust assets, the spendthrift provision is unenforceable under Arkansas law, Cheryl's interest is not subject to a "restriction on . . . transfer" under "applicable nonbankruptcy law" as required for application of the § 541(c)(2) exception, and therefore Cheryl's interest should be included in her bankruptcy estate. They cite Hartsfield v. Lescher, 721 F. Supp. 1052 (E.D. Ark. 1989), in support of this argument.

In <u>Hartsfield</u>, the beneficiaries of a trust with a spendthrift provision extended the trust's termination date, an action that was permissible under the terms of the trust instrument at issue. Applying Arkansas law, the district court determined that the extension of the trust's termination date by the trust beneficiaries caused them to lose the protection of the trust's spendthrift provision. According to the court, the beneficiaries were not entitled to "enjoy the protection of the spendthrift provision while dictating when they should receive the corpus" of the trust. <u>Id.</u> at 1058. A contrary ruling, the court reasoned, would allow the beneficiaries to purposely avoid receiving property to which they were entitled in an effort to frustrate creditors.

In <u>Hartsfield</u>, the spendthrift provision was invalid under Arkansas law because the beneficiaries of the trust retained—and in fact exercised—the power to revise the terms of the trust. In contrast, the terms of Trust C give Cheryl no such authority. Cheryl, as *beneficiary* of Trust C, retains no power to extend the trust's termination date, to delay or prevent receipt of the net income distributions that are due her under the terms of the trust, or to modify the terms of the trust or the spendthrift provision in any way. Accordingly, the <u>Hartsfield</u> holding is not relevant to the facts in this case.

To the extent Appellants argue that Cheryl, the *beneficiary* of Trust C, should be denied the benefit of the spendthrift provision because as *executrix* of Ronald's estate, she exercised control over probate assets that had been designated to become trust assets but had not yet been transferred to the trust, we are not persuaded. As discussed above, the court in <u>Hartsfield</u> held that a trust was invalid under Arkansas law because the *beneficiaries* retained an impermissible degree of control over trust assets. Appellants cite no federal or Arkansas case—and we have found none—in support of extending that holding to address the circumstances of this case.[6]

_____

[6]Recognizing the novelty of their argument, Appellants concede that they "cannot find precedent for the circumstances presented in this appeal." Br. of Appellants at 25.

In a related argument, Appellants cite the doctrine of estoppel *in pais*, or equitable estoppel, to argue that Cheryl's misconduct as executrix under Ronald's will should bar her from enjoying the protection of the spendthrift provision of the will as the beneficiary of Trust C. The Arkansas Supreme Court has described the doctrine of estoppel *in pais* as follows: "A party who by his acts . . . or by failure to act . . . under circumstances where he should do so, either designedly, or with willful disregard of the interests of others, *induces or misleads* another to conduct or dealings which he would not have entered upon *but for this misleading influence*, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so misled." Rogers v. Hill, 232 S.W.2d 443, 444 (Ark. 1950) (citations to quoted cases omitted) (emphasis added). To successfully raise an estoppel claim, Appellants must establish that they relied in good faith and to their detriment on Cheryl's conduct. See Bethell v. Bethell, 597 S.W.2d 576, 584 (Ark. 1980).

Appellants have not established that the estoppel *in pais* doctrine applies in this case. Although Cheryl may have failed in her duties as executrix, Appellants cite to no evidence that Cheryl attempted to induce or actually induced them—Wetzel, the trustee of Cheryl's bankruptcy estate, and Bachelor, the personal representative of Ronald's estate—to detrimentally rely on any misleading position or action taken by her. As noted above, Bachelor holds a $1.5 million judgment against Cheryl that he received by assignment when he settled a lawsuit against 1919M. Although *1919M* may have had an argument that it detrimentally relied on some misleading act of Cheryl's such that estoppel *in pais* might arguably apply, attributing 1919M's detrimental reliance to Bachelor, who simply accepted assignment of 1919M's judgment in settlement of an unrelated lawsuit, is an expansion of the doctrine that we are not willing to make. As noted by Regions, Bachelor's decision to settle his lawsuit with 1919M and accept as "payment" an assignment of 1919M's judgment against Cheryl was a business decision in which Cheryl was not involved. Neither Bachelor, as the holder of 1919M's judgment against Cheryl, nor Wetzel, as Cheryl's bankruptcy trustee, has presented evidence that he detrimentally relied on Cheryl's misleading

acts. Appellants may have suffered financially from Cheryl's actions as executrix, but they have not presented evidence that any such financial damage stemmed from their detrimental reliance on actions taken by Cheryl as the beneficiary of Trust C with intent to induce their reliance.

In sum, we reject Appellants' argument that Cheryl, acting as executrix of Ronald's estate, exercised improper control over assets earmarked for Trust C and thereby invalidated the spendthrift trust. Although Cheryl, acting as executrix, retained control over the assets in Ronald's estate, and she may have improperly exercised that control in her capacity as executrix, her conduct in that capacity did not invalidate the spendthrift provision.[7] Because the spendthrift provision is enforceable under Arkansas law, Cheryl's interest in the net income from Trust C is subject to a "restriction on . . . transfer" under "applicable nonbankruptcy law," the § 541(c)(2) exception applies, and Cheryl's interest in the distributions of net income from Trust C is not a part of her bankruptcy estate. And Appellants have failed to establish the requisite inducement and detrimental reliance to successfully assert that Cheryl should be estopped from claiming the benefit of the spendthrift trust.

Appellants next argue that the Bankruptcy Court misinterpreted the United States Supreme Court's decision in Patterson v. Shumate, 504 U.S. 753 (1992), and improperly concluded that trust income excepted from a beneficiary's bankruptcy estate under § 541(c)(2) is forever protected from execution by the beneficiary's creditors, a protection not enjoyed by a trust beneficiary who has not filed a

---

[7]Addressing Bachelor's argument that Cheryl should not be permitted to profit as a beneficiary under Ronald's will when she flouted her duties as executrix under the same will, the court noted that Bachelor had pursued these claims against Cheryl in the probate court, the parties had reached a settlement agreement in the liquidated amount of almost $6 million, and Bachelor "could seek relief from the stay to proceed with any remaining claims." Bankr. Ct. Op. of July 21, 2009, at 10. The court concluded that Cheryl's "actions as Executrix do not defeat [the] net income interest she is entitled to as a beneficiary." Id. As discussed above, we agree.

bankruptcy petition. According to Appellants, Patterson dictates uniform treatment of creditors regardless of bankruptcy status. And because Arkansas law allows a creditor to execute on income paid from a spendthrift trust at the moment that income is received by the debtor, Patterson requires that the same right to execute must exist when the debtor has filed a bankruptcy petition. See Ark. Code Ann. § 28-73-502(c) (Supp. 2009) (stating that a creditor "may not reach the interest or a distribution by the trustee *before* its receipt by the beneficiary") (emphasis added). In other words, because Arkansas law does not protect income distributions from a spendthrift trust once they are distributed to the beneficiary, Patterson instructs that bankruptcy law cannot provide such protection simply because the beneficiary is also a debtor in bankruptcy.

The Appellants overstate the Bankruptcy Court's conclusion. Contrary to Appellants' assertion, the Bankruptcy Court made no determination regarding the rights of Cheryl's creditors to the distributions of net income from Trust C. As noted above, the Bankruptcy Court was presented with a single issue for resolution: "[W]hether [Cheryl] or her bankruptcy estate is entitled to the . . . net income of Trust C." Bankr. Ct. Op. of July 21, 2009, at 2. And it held only that the distributions of net income from Trust C were not part of Cheryl's bankruptcy estate. Whether Cheryl's creditors—including Bachelor—are entitled to some other form of relief that would permit access to those distributions was not an issue before the Bankruptcy Court and was not an issue upon which that court rendered a decision. Like the Bankruptcy Court, we decline to opine on the issue.

Finally, Appellants contend that the Bankruptcy Court's misinterpretation of Patterson resulted in the court incorrectly applying § 541(c)(2) to a spendthrift trust and improperly equating the status of payments from a spendthrift trust with the status

of payments made under an ERISA benefits plan.[8]  In <u>Patterson</u>, the Court held that the anti-alienation provision in a defined benefits plan that qualified as a pension plan under ERISA was a "restriction on . . . transfer" under "applicable nonbankruptcy law" sufficient to trigger application of the § 541(c)(2) exception.  The debtor's interest in his pension benefits was thus properly excluded from his bankruptcy estate.  504 U.S. at 760.  The Court stated that its decision "ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status."  <u>Id.</u> at 764.

The ERISA benefits examined in <u>Patterson</u> were exempt from execution not because the Court excluded the benefits from the beneficiary's bankruptcy estate under § 541(c)(2) but because those benefits simply retained their exempt status under "applicable nonbankruptcy law" after the beneficiary filed his bankruptcy petition. Application of § 541(c)(2) did not change the exempt status of the ERISA benefits at issue; it simply maintained the status quo.  Here, the Bankruptcy Court cited <u>Patterson</u> for the unsurprising proposition that because Cheryl was the beneficiary of a valid spendthrift trust under nonbankruptcy law, her interest in the distributions of net income from that spendthrift trust was entitled to the same protections and restrictions *after* she filed her bankruptcy petition as it enjoyed *before* she filed her bankruptcy petition.  <u>Cf.</u> <u>Drewes v. Schonteich</u>, 31 F.3d 674, 678 (8th Cir. 1994) (determining that the agreements at issue created valid spendthrift trusts under Minnesota law, applying the § 541(c)(2) exception, and holding that the "monthly payments" distributed from those trusts to the debtor were "not part of the bankruptcy estate under § 541").

For the foregoing reasons, we affirm.

_____

_____

[8]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1056(d) (prohibiting assignment or alienation of pension plan benefits).